### POHLE v. SECOND AVE. R. CO.

(Supreme Court, Appellate Division, First Department. January 15, 1897.)

NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.

    A verdict for plaintiff will not be set aside, as against the weight of evidence, where the issue was whether defendant's street car was in motion when plaintiff attempted to board it, and plaintiff testified that it was not, though his testimony was contradicted by that of the conductor and a passenger, and by a statement signed by plaintiff, made to a person employed by defendant to prepare the defense in its accident cases, who testified that he wrote the statement at plaintiff's dictation, and read it to him before he signed it, plaintiff testifying that he did not know what was put in the statement. Van Brunt, P. J., and Barrett, J., dissenting.

Appeal from trial term, New York county.

Action by Rudolph Pohle against the Second Avenue Railroad Company for personal injuries. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Payson Merrill, for appellant.

Charles Steckler, for respondent.

INGRAHAM, J. We think the questions in this case were for the jury, and that, they having been presented in a charge which was fully as favorable to the defendant as the evidence justified, the judgment should be affirmed. The plaintiff testified: That he stood where the car was accustomed to stop, about 30 feet from the junction of East Broadway and Chatham Square, waiting for a car of the defendant's line. That, as the car came up, the conductor and driver were both in the front, engaged in conversation. That the car stopped. That he had two bundles, one of which he put on one of the seats of the car, and then put his left foot on the step. That, as soon as he got his foot on the step, the car moved on. That the conductor then shouted, "Look out for the wagon!" That he (plaintiff) did not see the wagon, but was squeezed between it and the car, and was thrown back. The car was one of the open cars, with a step running along its whole length, which affords means of access.

It is not disputed that, if the testimony of the plaintiff is to be believed, the jury were justified in finding the verdict which they did. It is claimed, however, that the verdict is against the weight of evidence, because it is contradicted by the conductor who was on the car, and one Dennis Martin, who was a passenger, both of whom testified that the car was in motion, and that the plaintiff endeavored to board the car without waiting for it to stop. A paper was also produced, signed by the plaintiff, which states that, when the plaintiff was getting on the car, the car was going fast. We have thus a case where a person who is injured swears positively that, before he attempted to board the car, it came to a stop; the evidence of the conductor that the car did not stop, his testimony being corroborated by a passenger on the car; and the production of a paper, signed by

the plaintiff, which corroborates the testimony of the conductor. I think that if this paper had been written out by the plaintiff himself, as his voluntary statement, made shortly after the accident,—corroborated, as it is, by the conductor and the other witness,—a different case would be presented. This paper, as it was prepared, is not entitled, however, to the same credit as one prepared in that way. It is not pretended that the plaintiff wrote it. What happened was this: The plaintiff went to the railroad company, to complain of the accident, and to demand some compensation for his injury. He was met there by a person who describes himself as complaint clerk of the Second Avenue Railroad Company, and says that he is employed by the defendant to look up accident cases, to secure witnesses, and to prepare defenses for the railroad company. When this plaintiff appeared, he was referred to this individual, who at once took up a blank containing printed forms of questions, and filled out what purport to be the answers of the plaintiff to those questions; and to that the plaintiff put his signature. Babcock, the person who wrote this statement, swears that he put down in it nothing but what the plaintiff told him, and all that the plaintiff told him, and that he read it over to the plaintiff. The plaintiff swears that Babcock read the paper to him, but that he (the plaintiff) did not know what was put down. It is quite evident that the weight to be given to a paper prepared in this way, which was not read by the plaintiff, and as to which we have only the word of this employé of the defendant, whose duty it was to look up accident cases, to secure witnesses, and prepare defenses for the railroad company, is quite different from that to be given to a paper written out by a party, and purporting to state the facts as they occurred. This man assumed that he had some claim against the railroad company, and went there to enforce it. Babcock, in the performance of his duty of preparing a defense for the railroad company, undertook to obtain from the plaintiff a statement which would exonerate the company from liability. A paper obtained from a person under such circumstances is certainly so open to suspicion as to require that the weight to be given to it should be determined by the jury. The inherent probability is rather in favor of the plaintiff. He stood on the corner, motioning for the car to stop. He says the car stopped. The conductor says it did not stop. No reason is given to show why the driver refused to stop and take this passenger on board. It seems to have been on a street corner. The railroad is operated for the purpose of carrying passengers. The car was almost empty. It does not appear that the car was late, or that there was any reason to hurry; and, under ordinary circumstances, the probability would be that the car would stop to allow a passenger to get on board. The conductor says that the car did not stop; that the plaintiff came running from the sidewalk behind an ice wagon, and attempted to board the car, when he fell down opposite the ice wagon. The witness Martin, who was a passenger on the car, also testified that the man got on, and stood on the steps of the car; that he then fell down, and after that the conductor picked him up; that the car had not

come to a stop when the plaintiff endeavored to get on. This was all the evidence, it being conceded that the driver was dead.

The court left it to the jury to say whether or not the car had stopped when the plaintiff attempted to get on, and instructed them that, if the car was in motion, it was negligence for the plaintiff to attempt to board the car. Taking the evidence as a whole, the plaintiff's story is not at all improbable. The jury heard him tell his story, could notice his manner in testifying, and could judge of the credibility to be given to his testimony. They also heard the conductor and the passenger and the employé of the company who got the statement from the plaintiff. We are not required to say that we approve the decision of the jury upon the question submitted to them; and, while this may be a close case, upon the whole testimony we do not think that there is such a plain preponderance of evidence as would justify us in setting aside the verdict, on the ground that it was against the weight of evidence.

A motion was made for a new trial, upon the ground that the decision was against the weight of evidence. If the trial judge, having had the witnesses before him, being familiar with the occurrences at the trial, had set aside the verdict, on the ground that it was against the weight of evidence, it does not follow that we should interfere with this exercise of his discretion. He, however, has denied the motion, and we think, upon the whole record, that we would not be justified in ordering a new trial upon that ground.

The judgment should therefore be affirmed, with costs.

RUMSEY and O'BRIEN, JJ., concur.

VAN BRUNT, P. J. (dissenting). The only ground presented upon this appeal for a reversal of the order and judgment is that the verdict was against the weight of evidence. The plaintiff swore: That he resided in Astoria, and had lived there for 18 years; was 68 years of age; and his business was that of sieve manufacturer. That on the 2d of September, 1893, he was in the city of New York, and, after transacting some business in Water street, he went up to Chatham Square, to go home, and waited on Oliver street, at Chatham Square, for a Second avenue car to come, these cars running to the Astoria Ferry. When the car came in sight, he hailed the conductor and driver to stop the car. They were both engaged in conversation on the front platform. The car stopped. The plaintiff had two bundles, one in his right hand, and the other upon the ground. When the car stopped, he put the bundle he had in his right hand into the second seat from the end of the car. He then took up his other bundle, and got his left foot on the platform of the car, and, as soon as he got his foot on, the car started. That he could not "come in so quick in the car," and then the conductor shouted to him, "Look out for the wagon!" He did not see any wagon, and was squeezed between the car and the wagon, and thrown back, and his hands were squeezed, and his shoulder was hurt, by tumbling down behind. The car then stopped, and the conductor

jumped down, and took him by the hand, and lifted him into the car, and went on.    No horses were attached to the wagon.    There was a step running alongside of the car, and the plaintiff testified that he had his left foot on the step, and that he got the bundle, and wanted to get in when the car started suddenly.    There were only three persons on the car at the time,—the driver, the conductor, and one passenger.    The driver died before the trial.

The conductor testified that the car was going up towards Oliver street, passing Chatham Square, when the plaintiff came running from the sidewalk, behind an ice wagon; that as he stepped upon the car, the car being in motion at the time, and going fast, he fell down, opposite the ice wagon; that the conductor was on the other side of the car, on the west side, about the center of the car.    He testified: "I was after strapping up a big curtain that dropped down, and I was going to the tail end of the car when I seen this man running for the car.    He deliberately stepped on the board, and fell right opposite this ice wagon, and I went to his assistance, and assisted him."    He further testified that the plaintiff told him that he had motioned to the driver to stop, but the driver did not see him, and that the car was still going on when the plaintiff fell off.    He further testified that the car was abreast of the ice wagon at the time the plaintiff fell, and that, about the time the car came to the ice wagon, he was on the step.    It is urged upon the part of the counsel for the respondent that this story of the conductor could not possibly be true, because there was no room between the step of the car and the wagon for him to get on if the car was abreast of the ice wagon at the time.    But it is manifest, upon considering the testimony of the conductor, that this was not his statement.    He said that the plaintiff ran out from behind the ice wagon, and that, at the time he fell, the car was abreast of the wagon, but that, when the car reached the wagon, the plaintiff was on the step.    The other witness was one Dennis Martin, the driver of a coal wagon.    He was on the car at the time of the happening of this accident, sitting on the back seat of the car, on the west side.    He testifies that the man got on, and stood on the step of the car.    "I couldn't say did he knock against the ice wagon, or did he fall down himself, but he fell down, and after that the conductor picked him up, and put him on the car, or took his arm, getting on the car again.    The car had not come to a stop when the plaintiff endeavored to get on.    It was not to a stop.    The car was moving at the time he stepped on it.    The car was three or four feet above this ice wagon, as nearly as I can remember, when the plaintiff tried to get on."    The witness states that he gave his name to the conductor after the accident.

The defendant also produced a statement of the manner of the happening of the accident signed by the plaintiff.    It appears from the evidence of David E. Babcock that he was employed by the defendant to look up accident cases, to secure the witnesses, and prepare defenses for the railroad company, and that the plaintiff came to the depot of the railroad company, to his office, about two weeks

after the accident; that the plaintiff told him that he had been injured, and he took out a paper, and the plaintiff dictated a statement to him, and he wrote it down as he dictated it. He did not put anything in that paper that the plaintiff did not dictate to him, not a word. He further says that he handed the statement to the plaintiff after it was written, and the plaintiff handed it back to him, and told him to read it, and that he did read it to the plaintiff, and the plaintiff thereupon signed the statement. In that statement the plaintiff says that the car was in motion at the time he attempted to get on. The plaintiff states:

"I didn't make any statement. A gentleman asked me how the things was, how things was going on; and I answered him, and he took my answers down. I did not read them. He read that, and I say, 'That is all correct so far, but you don't put in that I get thrown down, and get my head hurt behind;' and he put that in, and read it, and he says, 'Now sign that,' and I put my name down. I don't know what he put down. It might be he put so many things in it what I did not say. He read it over once."

The question involved is whether, upon this condition of the evidence, a verdict in favor of the plaintiff should be allowed to stand. It seems to me that it should not. There is nothing tending to impeach the action of the witness Babcock. The plaintiff, after swearing that he made no statement, admits that he did; that he made corrections in the statement; that it was read over to him; and that he signed it as correct. The conductor and the passenger upon the car both agreed that the car was in motion when the plaintiff attempted to board it, and the statement signed by the plaintiff corroborates this testimony. It seems to me that where there are two unimpeached witnesses, supported by the written statement of the plaintiff, opposed only by the unsupported testimony of a party to the suit, the verdict in favor of the latter should not be allowed to stand.

It is alleged that a mistake was made in the taking of this statement, in that the plaintiff is made to say that he was a silk manufacturer, whereas he was a sieve manufacturer. But the similarity in the sound of the words is certainly sufficient to account for this discrepancy. There is nothing whatever upon this record to impeach the integrity of the statement of the witness Babcock, and it is not to be assumed that he was guilty of the gross fraud of pretending to read to the plaintiff a statement which did not really exist. It is much more probable that the plaintiff has since his visit to the office of the railroad company become aware how necessary it was for him, in order that he should succeed in an action against the company, that the car should have stopped. While verdicts of juries should not be disturbed without good cause shown, in a case like the present, where the weight of evidence is all one way, it does not seem to me that the court should refuse, in the interests of justice, to exercise the right which it has to supervise such verdicts.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

BARRETT, J., concurs.