## WALL v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   December 11, 1900.)

1. RAILROADS—INJURIES AT STREET CROSSING—NEGLIGENCE—QUESTIONS FOR JURY.

A group of tracks crossed a street, the first being 36 feet from the second, and the second and remaining tracks being about 7 feet apart. Plaintiff, an experienced brakeman, testified that as he approached the crossing a freight train was standing on the fourth track, extending several hundred feet on either side of the street; that he, with others, crossed the intervening tracks, and, while waiting for the train to start up, another freight train moved in on the second track behind them, and stopped, hemming them in; that after they had stood there several minutes an engine backed up "middling fast" on the third track, on which they stood, and to escape being run down they climbed over the bumpers, and attempted to pass between the cars of the first train, which suddenly started up, and plaintiff was injured. Plaintiff had inquired of a brakeman on the train how soon it would start up, and he had answered, "I don't know; jump on; jump across, if you are in a hurry." Plaintiff was in a hurry, but testified that he did not attempt to climb through for several minutes thereafter, and not until he saw the engine approaching, and then only to escape the danger; and he was corroborated by two other witnesses. *Held*, that there was sufficient evidence to go to the jury on the question of his contributory negligence, notwithstanding he had made conflicting statements soon after the injury, and was contradicted by several witnesses.

2. SAME—INSTRUCTIONS.

The court having recited the substance of plaintiff's claim as to how the accident happened, and of defendant's claim, and of the testimony of the witnesses, and left it to the jury to say, on the entire evidence, whether or not plaintiff was free from contributory negligence, defendant could not complain of any failure to submit specifically the question of plaintiff's contributory negligence in permitting himself to be hemmed in by the second train, having made no objection nor requested the submission of other propositions.

8. SAME.

Notwithstanding plaintiff was negligent in getting into such dangerous situation, yet being in plain view of the employés operating the engine, and his danger being necessarily apparent to them, they were negligent in backing the engine down onto him, and the company was liable for any injury resulting, either directly or indirectly, from plaintiff's attempt to escape.

Williams and Laughlin, JJ., dissenting.

Appeal from trial term, Onondaga county.

Action by Patrick Wall against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

The action was commenced on the 20th day of January, 1899, to recover damages for injuries sustained by the plaintiff on the 29th day of November, 1897, while attempting to pass between the cars of a freight train standing across South West street, in the city of Syracuse, alleged to have been caused through the negligence of the defendant.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Frank Hiscock, for appellant.
Thomas Hogan, for respondent.

McLENNAN, J. South West street, in the city of Syracuse, extends north and south between the freight yard of the defendant's railroad on the west, and the yard of its passenger depot on the east. It is 66 feet wide, and has a sidewalk upon either side. The tracks of the defendant's railroad, eight or nine in all, cross the street at right angles. The first or most northerly track is 36 feet from the one next south. There is then a group of four tracks, the only ones here involved. The distance from the first or northerly track of such group to the one next south is 6 feet. The distance from the second to the third track of such group is 7.35 feet. The freight cars and engines used by the defendant project over the rails of the track substantially 2 feet upon either side. So that, between freight cars standing upon the first and second of the four tracks, there would be a space of 2 feet. Between freight cars standing or passing upon the second and third tracks there would be a space of 3.35 feet. Between 5 and 6 o'clock in the afternoon of the 29th day of November, 1897, the plaintiff was upon the sidewalk on the west side of South West street, going south to his home. There is evidence to warrant the jury in finding that, as the plaintiff approached the crossing from the north, a freight train, which extended several hundred feet upon either side of the street, was standing upon the third of the group of four tracks; that the plaintiff, with other pedestrians, approached close to such standing train, and waited several minutes for it to move off from the street, in order that they might continue southward. While so waiting another freight train pulled onto the first or northerly track of the four, stopped, the engine was detached, and it also extended for a considerable distance upon either side of the street, leaving the plaintiff and the other pedestrians between the two stationary freight trains. While in that situation an engine came backing east on the second or middle track towards the place where the plaintiff was, at a "middling fast gait." The plaintiff testified that to avoid being run over by the approaching engine, which he regarded as certain to occur if he remained where he was, he attempted to cross between the cars of the freight train standing on the third track, and while so doing the train suddenly started, he fell to the ground, the wheel or wheels passed over his leg, and it was injured to such an extent that amputation was necessary. The plaintiff testified:

"When I saw this engine coming, I had to get through the train to get rid of being hit. That is my idea about it. That is the safest way. It was the only way. That was why I went through the train, so the engine wouldn't hit me. That was one reason, and my children was sick, and I was in a hurry to get home. If it hadn't been for the engine coming down on that track, I couldn't tell you whether I would have gone through the train just the same or not, but the real reason that started me when I did go was because I saw this engine coming down the track, and I thought I had to go so as not to get hit. That was the real reason why I went through this train, and the only reason. There wasn't any room for anybody to stand there without getting hit. It wouldn't be safe to stand there. I couldn't tell you whether I was the second or third man through the train,—second or third is right; so I didn't watch to see if there were two or three left behind me on this track. There were six of us there at first,—maybe six or seven. I couldn't say how many had got through ahead of me,—one or two is my best recollection. The rest of the six or seven, besides the one or two that went through ahead of me and besides

me, were some place there. I couldn't tell you where they were. I couldn't tell you if they went through ahead of me. The last I saw of them I left them there on the track. I didn't keep track of anybody. I was making my escape myself. The engine was about sixty or seventy feet away from me at that time. I couldn't tell you what gait she had. She was backing up. It was coming middling fast. It didn't pass me before I was hurt. I don't know whether it came down to this place where I was or not. * * *"

The plaintiff also testified:

"When the freight train came down on the first of these four tracks,—the northerly of these four tracks,—I might have been there ten or twelve minutes. That train stopped there for a little while, and they cut off the engine, and it backed off. It was the engine on the other train which had stopped on the northerly of these tracks that was backing down on the track where I was standing between the two trains, so, as I stood there while this engine was coming down, I was standing between two stationary trains. The train on the north there at that time, as near as I can remember, didn't have any engine on it. This train on the north track was in there when I saw this brakeman on the top of the train. I couldn't tell you how long it had been there. It wasn't more than maybe four or five minutes. I saw the brakeman on top of the train with the light before I saw the engine backing down on the track. About a minute or so before I saw the engine I said to the brakeman, 'How long are you going to block up this crossing so we can't get across?' He says, 'I don't know; jump on; jump across, if you are in a hurry.' I didn't know him at all. I couldn't describe to you how he was dressed. He was dressed like a working man. He had blue jeans on,—overalls. I didn't notice what kind of a lantern he carried. He had a lantern. It was a white light. I talked with him on the ground. He was right by the cars. I saw him before he got down on the ground coming off the top of the cars. He was four or five cars from me. He came down from the box car. At that time, when the brakeman came along there, I was standing there ten or twelve minutes. Six or seven more people were standing there with me. I will say about that, about six or seven. There might be more than that. I didn't count them. That is my best recollection,—six or seven. I don't think there were any more than that, and this train had been there filling the track all the time,—this train that I tried to crawl through,—and had been there fifteen minutes up to this time. * * *"

It will be observed that, if an invitation to cross between the cars of the standing train was extended to the plaintiff by the brakeman, he did not act or rely upon it immediately, at least; for he remained standing where he was for some minutes after the alleged conversation with the brakeman, and until he saw the engine 60 or 70 feet distant, approaching him upon the middle or second track.

Apparently the only question litigated upon the trial, and the only one which is discussed by counsel upon this appeal, is whether or not the plaintiff is chargeable with contributory negligence in attempting to pass between the cars of the freight train standing upon the third track. The negligence of the defendant seems to have been assumed, and that question was submitted by the learned trial court to the jury in general language, and without calling attention to any particular facts or circumstances which it was claimed established the fact. The court simply said upon that question: "If you find the plaintiff's story is true, and you find that the defendant was guilty of negligence, you come to the question of damages." No objection was made or exception taken by appellant's counsel to the submission of the question in that manner, nor was any request made that it be submitted in more definite form, and no point was made by appellant's counsel upon the argument, nor in his printed

brief, that the defendant was not guilty of negligence which caused the accident. Indeed, freedom from negligence on the part of the defendant, under the circumstances disclosed by the record, could not be successfully argued, in view of the decisions of the courts of this and other states. Borst v. Railroad Co., 4 Hun, 346, affirmed in 66 N. Y. 639; Grimes v. Railroad Co. (Ind. App.) 30 N. E. 200; Selleck v. Railroad Co., 93 Mich. 375, 53 N. W. 556, 18 L. R. A. 154; Andrews v. Railway Co., 77 Iowa, 669, 42 N. W. 513; Laible v. Railroad Co., 13 App. Div. 574, 43 N. Y. Supp. 1003, affirmed in 162 N. Y. 621, 57 N. E. 1114.

Only two questions are argued upon this appeal: First, that the verdict of the jury finding the plaintiff free from contributory negligence is against the weight of evidence; and, second, conceding that the plaintiff's version of the transaction is true, as matter of law he was guilty of contributory negligence.

The plaintiff's version of the transaction was corroborated in all essential particulars by two other witnesses, and it cannot be said that his story is unnatural or unreasonable; and notwithstanding he made a statement soon after the accident occurred, and while he was suffering from the effect of his injuries, which differed materially from the testimony given by him on the trial, and was contradicted by several witnesses called by the defendant, we think the truthfulness of his testimony and the effect to be given to the conflicting statements were for the jury, and that their finding in that regard should not be disturbed. Pohle v. Railroad Co., 13 App. Div. 393, 42 N. Y. Supp. 1092.

Assuming, then, that the facts were as testified to by the plaintiff and his witnesses, it is apparent that at the time the plaintiff attempted to cross over the bumpers of the train on the third track he was in a dangerous situation. He was hemmed in between two stationary freight trains, each extending several hundred feet upon either side of the public highway which he was attempting to traverse. He saw approaching him, "middling fast," 60 or 70 feet away, an engine on the middle track, which was liable to run over him. He then tried to escape by crossing over the train in question. The plaintiff had the alternative of doing as he did, of taking the chances of standing between the engine and the freight train, in a space not exceeding 3 feet in width, while the engine passed him, of crossing over the stationary freight train to the north of him, attempting to proceed ahead of the moving engine until he reached the end of the freight trains, and thus go around them, or do as suggested by appellant's counsel in his brief,—lie down flat upon the ground between the second and third tracks. It is apparent that either course would have been dangerous, and, although after the accident it can be seen that if the plaintiff had sought to escape by some means other than the one adopted by him the accident would probably not have happened, that fact by no means establishes contributory negligence upon his part. The rule is correctly stated in the headnote in Twomley v. Railroad Co., 69 N. Y. 158, as follows:

"Where one is placed by the negligent act of another in such a position that he is compelled to choose upon the instant, and in the face of apparently grave

and impending peril, between two hazards, and he makes such a choice as a person of ordinary prudence, placed in the same situation, might make, and injury results therefrom, the fact that if he had chosen the other hazard he would have escaped injury does not prove contributory negligence."

The plaintiff had been in the employ of railroad companies as brakeman and yardman for years prior to the accident, for seven years in the freight yard of the defendant immediately west of where the accident occurred, and it must be assumed was entirely familiar with the operation and movement of trains, and the danger to be apprehended from attempting to pass between the cars of a freight train temporarily standing upon the street in question. We therefore are of the opinion that the alleged invitation extended to the plaintiff by the defendant's brakeman to cross over the standing train would in no manner relieve the plaintiff from the imputation of contributory negligence, if his act in attempting to cross was of such a character as to charge him therewith—First, because, as we have seen, the danger was apparent, and must have been fully understood by the plaintiff; second, because the brakeman, by the alleged conversation, gave no assurance that the train was to remain standing for any length of time, but, on the contrary, expressly stated that he did not know when it would start; and, third, because the plaintiff did not rely upon such invitation, if given, but remained where he was for several minutes after, and until he saw the engine approaching him. He testified, in substance, that the danger which he apprehended from the engine was the sole inducement which led him to attempt to cross; but, as we have seen, wholly independent of such invitation, or whether it was extended or not, the plaintiff, being in a place of danger, is not chargeable with negligence, as matter of law, because he chose the means which he did to escape from the perilous situation which he was in. Twomley v. Railroad Co., supra.

It is urged by the appellant's counsel that the plaintiff was negligent in allowing himself to be hemmed in by the two freight trains; that when he saw that a train on the third track blocked the street he should have remained north of the first or northerly track until such train was moved and the street was clear; or that, if he approached to the side of such standing train, when he saw the freight train going onto the first of the four tracks behind him he should have retreated northerly, and to the other side of it. We think the statement does, as matter of law, properly indicate the plaintiff's duty in the premises. If such a course had been pursued by the plaintiff, undoubtedly the accident would not have happened; but whether, under all the circumstances, it would have been the exercise of only ordinary care and prudence was for the jury to determine. The plaintiff was in a hurry to reach his destination. A freight train had blocked the public street which he was endeavoring to traverse for several minutes. He expected, and had a right to expect, that in a moment more the defendant would remove the obstruction. Then, seeing a train approaching upon the second track, behind him, was he required to also put it between him and his destination, or was he required to wait outside of or at the northerly

side of the first track until all the tracks crossing the street, nine in this case, were clear of trains? We think these questions were for the jury, the answer depending upon what a person of ordinary care and prudence would have done under like circumstances. No case is cited by the appellant's counsel, and after diligent search we have been unable to find a case, which holds that it is negli-gence, as matter of law, for a traveler upon a public highway crossed by a number of railroad tracks, upon one of which there is a freight train which blocks the highway, to proceed to such obstructed track, and there wait for it to pass from the crossing; or that, to avoid being chargeable with negligence, such traveler must retrace his steps to the outside of the most remote track, in case it is about to be occupied with another train. A large number of cases may be found in which the pedestrian did precisely as was done by the plaintiff in this case in that regard, and in which recoveries were sus-tained, but in none of these cases was it urged that such conduct constituted negligence as matter of law. And so the precise ques-tion was not decided. The jury having found that the plaintiff was not negligent in proceeding to the side of the freight train standing on the third track, and remaining there after he saw a freight train was to occupy the first track, the whole question of the plaintiff's negligence is settled favorably to him; for, as we have seen, when the engine was moving down upon him, and he was in imminent peril of being run over, he was justified in seeking the means of escape which he did, and which apparently was quite as feasible as any other which was open to him.

It is suggested that the question whether or not the plaintiff was guilty of contributory negligence in proceeding to the side of the ob-structing freight train, and remaining there after he saw a train had been placed on the second track, behind him, was not submitted to the jury; that the only question bearing upon the contributory negligence of the plaintiff which was submitted for their consid-eration was whether or not the plaintiff attempted to cross over the obstructing freight train pursuant to the invitation of defendant's brakeman; and that the jury were charged, in substance, that unless the plaintiff was absolved from the charge of negligence by such invitation he could not recover; and therefore that the verdict should not stand, because, upon the uncontradicted evidence, the plaintiff did not rely upon such invitation, if given. A sufficient answer to the suggestion is that the defendant's counsel made no request to have any other or different question submitted to the jury. Upon the request of the plaintiff's counsel, the court did charge "that where one, by the negligence of another, is so placed that he must choose on the instant, and in the face of grave and impending peril, between two hazards, and he makes such a choice as a person of ordinary care and prudence might make, his choice cannot constitute contributory negligence." But the charge of the court, as a whole, is hardly susceptible of the interpretation sug-gested.

The learned trial justice in his charge recited the substance of the plaintiff's claim as to how the accident happened, and of the testi-

mony given by him and his witnesses, and also the claim of the
defendant and the testimony of its witnesses. The court then, in
substance, left it to the jury to say upon the entire evidence whether
or not the plaintiff was free from contributory negligence. We think
any error or omission in the charge in the particular suggested is
not available to the defendant, in view of the fact that no objection
was made or dissatisfaction expressed with the charge, or any re-
quest made to submit other or different propositions for the consid-
eration of the jury.

It is not necessary to determine in this case whether it is negli-
gence, as matter of law, to attempt to cross over bumpers of a freight
train which blocks a public street where no other danger is to be
apprehended, as was apparently held in O'Mara v. Canal Co., 18 Hun,
192; or whether the question of contributory negligence in such
cases is one of fact for the jury, as was held in Phillips v. Railroad
Co., 80 Hun, 404, 30 N. Y. Supp. 333. In these cases, and in all
similar cases to which attention has been called, it was entirely
optional with the pedestrian whether he would attempt to cross or
not. He was in a place of safety, and made the attempt only to
avoid the inconvenience of delay. In the case at bar, as we have
seen, the jury would have been justified in finding that the plaintiff
attempted to cross between the cars of a standing train to avoid an
even greater danger and more certain injury than apparently would
result from attempting to cross over the freight train.

If the testimony of the plaintiff and his witnesses is to be credited,
when the plaintiff with the other pedestrians, was between the
freight trains, without means of escape, the freight engine was
backed down upon them, thus placing them all in imminent peril,
although they were in plain view, and their dangerous situation must
have been apparent to the defendant's employés operating such en-
gine. We think this constituted negligence on the part of the de-
fendant, and that for any injury resulting, either directly or indirect-
ly, from attempting to escape from the impending peril, the defend-
ant was liable, even although the plaintiff was negligent in getting
into such dangerous situation. Pakalinsky v. Railroad Co., 18 Wkly.
Dig. 44, affirmed in 96 N. Y. 639. It follows that the judgment and
order appealed from should be affirmed.

Judgment and order affirmed, with costs.

ADAMS, P. J., and SPRING, J., concur. WILLIAMS and
LAUGHLIN, JJ., dissent.

SPRING, J. I concur in the opinion of Mr. Justice McLENNAN,
except that, in my judgment, it does not give adequate effect to the
invitation of the brakeman to the plaintiff to cross between the cars
of the freight train. The plaintiff testified:

"After this gentleman told me to go across,—a brakeman that had a lamp
in his hand,—after he told me to cross across, there was one or two out of
the crowd that did take and went across, and I jumped on, and was just get-
ting off on the other side, when the train gave a jerk, and jerked me off, and
my leg got under the wheel before I could get myself up, and crushed my leg
off."

He further said that a moment or two elapsed after he saw the brakeman before the train approached, and that two or three of those standing by his side preceded him between the cars. During this brief time the brakeman, according to the plaintiff, remained at the crossing, and did not withdraw his invitation, or suggest that the train was about to start. The witness Green testified that he saw a man crawl through between the cars "about a minute after" the brakeman came down. The plaintiff further testified he relied upon this statement of the trainman that he could go across if in a hurry. The trial judge, in submitting the case to the jury, appreciated the importance of this invitation of the brakeman, for he said: "And it is only upon the supposition that the plaintiff's story is true, that he was invited over this train by a brakeman under the circumstances which he has related, that he can by any possibility recover in this case." This case is almost identical with Phillips v. Railroad Co., 80 Hun, 404, 30 N. Y. Supp. 333, where a like direction was given to the plaintiff by a brakeman, and which, under the circumstances, was held sufficient for him to pass between the cars of the freight train standing on the street crossing. To like effect is Distler v. Railroad Co., 151 N. Y. 424–429, 45 N. E. 937, 35 L. R. A. 762. The case of Solomon v. Railroad Co., 103 N. Y. 437, 9 N. E. 430, is clearly distinguishable from the present case. The plaintiff in that case attempted to enter a moving train on an elevated railroad when it was perfectly plain that he was in imminent danger, and that is the pith of the decision. The court in its opinion is very careful to limit its effect, and states that if some direction had been given to the passenger, or something had been said or done interfering "to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety," the rule would not be applicable. In the present case, the plaintiff, with five or six others, was wedged in between the tracks, and the oncoming engine made the situation a perilous one. The brakeman, in effect, told these people that the freight train, which for some time had barred their progress, would remain still longer, and that it was safe for them to climb over the bumpers between its cars. In his view, and in response to his invitation, they attempted to comply with it, and, while the plaintiff was crawling over, the train, without warning, "gave a jerk," throwing him on the ground, and crushing his leg under its wheels. There was not only nothing to indicate that the freight train, which had remained in the same situation for 10 or 12 minutes, was about to start, but, on the contrary, there was the assurance of the brakeman that there was no peril in attempting to go between its cars. To my mind, the invitation of the brakeman, under the circumstances of this case, is the potent fact in establishing the plaintiff's freedom from contributory negligence.

The judgment and order should be affirmed, with costs.