HENRY L. SELLECK v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

[See 58 Mich. 195.]

*Negligence—Obstruction of highway by train—Proximate cause.*

1. The question what a reasonable man might foresee is of importance in determining the question of negligence; but when the act complained of is negligent *per se*, the person guilty of it is equally liable for its consequences, whether he could have foreseen them or not.

2. A bus driver was obliged to wait at a street crossing near a railroad depot by reason of its being *unlawfully* obstructed by a freight train, and while thus detained a passenger train passed on a track beyond that occupied by the freight train, and enveloped the freight train at the crossing in smoke and steam. The horses, which were ordinarily gentle, and used to running trains as well as standing cars, and had never taken fright at either, became frightened, backed away, overturned the bus, and ran away, throwing the driver out and injuring him. And it is held that it was for the jury to determine whether the presence of the obstructing train did not give a different color and character to the other operations, and convert otherwise harmless incidents into fear-exciting agencies, and whether the presence of the obstructing cars did not produce the *effect* which caused the fright, the runaway, and the injury.

Error to Branch. (Loveridge, J.) Argued October 5, 1892. Decided November 4, 1892.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Weaver & Weaver* (*George C. Greene* and *O. G. Getzen-Danner*, of counsel), for appellant.

*John B. Shipman* (*Campbell & Johnson*, of counsel), for plaintiff.

[The points of counsel are fully stated in the opinion. —REPORTER.]

McGRATH, C. J. This is case for negligence.

Plaintiff, a bus driver, was *en route* for the depot, with two passengers. Three railway tracks crossed the street near the depot. A freight train occupied one of these tracks, and obstructed the street for over 20 minutes. The conductor of the freight train had gone to dinner. Plaintiff halted his team some 3 or 4 rods south of the tracks, and waited from 10 to 15 minutes for the freight to get out of the way, or to make a cut so that he might pass. While waiting, a passenger train came along on one of the tracks north of the track occupied by the freight train, enveloping the freight train at the crossing in smoke and steam. Plaintiff's horses became frightened, backed away, overturned the bus, and ran away, throwing plaintiff out and injuring him. The horses were ordinarily gentle, and were used to running trains as well as to standing cars, and had not before that time taken fright at either.

This is the second appearance of the case in this Court. On the former appeal this Court held (58 Mich. 195) that, while the declaration alleged that the horses were frightened and the injury occasioned by carelessly and negligently causing the passenger engine to exhaust great quantities of steam and . noise, the plaintiff had failed to give any evidence in support of the allegation of wrong to which he had by his declaration attributed the injury. Plaintiff amended his declaration, and now alleges that—

" Defendants did then and there, by their said cars and train, obstruct the said public highway for more than five minutes at one time, to wit, at said time; that is to say, they negligently and unlawfully obstructed it for more than five minutes immediately preceding the time when the plaintiff reached the spot as aforesaid, with their said cars and train, and at a time when the west-bound passenger

train run by the defendants over said railroad would arrive and depart from said depot, passing over the track on the north side of said freight train, and the engine drawing the same would exhaust great quantities of steam, and thereby, with its whistle and bell, make a great noise, and, the wind blowing fresh from the north, the smoke and steam from the passing engine would be driven south over the said freight train, carelessly, negligently, and wantonly neglecting to cut the train, and open a passage along said highway across said track at any time during said period of over twenty minutes, but wrongfully left the cars and train standing on the track across the said highway during all that time, totally blockading and preventing travel thereon during all of said period, well knowing people would need to use the street at said time in going to the depot, with and without teams and wagons, to meet the west-bound passenger train over said railroad; and also knowing that the blockade of said highway, as aforesaid, made it an unsafe and dangerous place for teams to be caught in."

It is insisted by defendant that the present case is ruled by the decision upon the former hearing, and stress is laid upon that part of the opinion in which the Court say:

" The plaintiff has not, by his declaration, attributed his injury to the illegal detention, and, if he had, it would have been idle, for the particular injury of which he complained, namely, the fright and running away of his horses, could not have flowed from that detention as a proximate cause."

The Court had already disposed of the first allegation of wrong, viz., that the defendant had negligently obstructed the street, and had eliminated that allegation from their consideration; but the trial court had instructed the jury that, if the plaintiff had been *unavoidably detained, and by reason of that detention,* and while waiting, the team became frightened by the surroundings, in consequence of which plaintiff was injured, the defendant was liable. It was with reference to this instruction that this Court used the language upon which stress is laid by defendant. It is not alleged or claimed that the fright and runaway were

occasioned by the *illegal detention* as the proximate cause, but by the obstruction which caused the detention. That opinion was written by Chief Justice COOLEY, and filed at the June term, 1885; but in the case of *Young v. Railway Co.*, 56 Mich. 430, 438, in an opinion filed at the April term of the same year, and concurred in by Chief Justice COOLEY, speaking for the Court, Mr. Justice CHAMPLIN says:

"If it be conceded that teams could be driven through the opening left by defendant between its cars, and across the plank crossing, without coming in contact with the rail of the main track, yet, if the freight car obstructed the traveled track, and by reason of such obstruction caused the plaintiff's horse to sheer off so as to throw one runner of the cutter against the rail of the main track, the horse being one of ordinary gentleness, such conceded facts would present a proper question for the jury to determine,— whether the injury resulted from leaving the freight car in that position, and whether plaintiff's husband was in the exercise of ordinary care while driving the horse.

"No railroad company has the right to obstruct a public highway with its cars an unreasonable length of time, and, as before stated, the Legislature has enacted that this time shall not, in any one instance, exceed five minutes. The liability arises from the duty of the company to leave the traveled part of the highway unobstructed after the expiration of the reasonable time limited by law. A violation of this duty is negligence, and, if a party is injured by reason thereof, being free from fault on his own part, wrong and injury concur, and the liability attaches.   *   *   *   We can only apply the law to those facts. The shying of the horse was the result of the act of the defendant in obstructing the highway. If the car was lawfully there, and defendant had not violated any duty at the time, no liability would have attached, for the reason that, although injury might have arisen from the shying of the horse, the defendant had been guilty of no wrongful or negligent act which concurred in producing the injury."

In the present case there was no intervening cause. The obstruction of the highway was a continuous breach of duty. It was a cause operating at the time of the injury. The smoke and steam were concurrent, rather than intervening,

causes. They were contemporaneous. They enveloped and environed the freight train, and produced a condition of the cars. It was for the jury to say whether the fright of the horses was caused by the appearance of the freight cars, surrounded as they were. Again, if the team was frightened by the noise and steam and smoke under the circumstances, it was for the jury to say, under testimony clearly tending to show that the team was used to passing trains and their attendant incidents, whether it was not the presence of the freight train across the highway, obscuring the origin of the steam and smoke and noise, that was the cause of the fright and injury. The wrongful act had not ceased to operate.

In the recent case of *Telephone Co. v. Robinson*, 50 Fed. Rep. 810, the company had permitted one of its wires to remain suspended across a public highway, a few feet from the ground, and plaintiff came in contact with it during an electrical storm, and was injured by a discharge of electricity, which had been attracted from the atmosphere. The court held that, since the electricity would have been harmless except for the wire, the defendant was liable.

"If," it is said, "the electric fluid with which the wire of the telephone company was charged at the time was an element, or the main element, in the production of the injuries to the defendant in error [plaintiff], still it is clear that the displaced wire furnished the means of the communication of the dangerous force which resulted in the injury. * * * To say that the agency of the telephone wire in the production of the injury was inferior to that of the electric current, which was the main cause, is not satisfactory. It is, in fact, to admit that the company's displaced wire furnished the means by which the dangerous force was communicated to and injured the defendant in error. True, it was a new force or power which intervened, with the production of which the telephone company had nothing to do; but upon this point, in *Insurance Co. v. Tweed*, 7 Wall. 52, the court say: 'If a new force or power has intervened, of itself sufficient to stand as the cause of misfortune, the other must be considered as too remote.'

The new force or power here would have been harmless but for the displaced wire and the fact that the wire took on a new force, with the creation of which the company was not responsible, yet it contributed no less directly to the injury on that account."

There the wire furnished the means of communication. Here it was a question for the jury to determine whether the cars did not give to the noise and steam and smoke a character which, as to this team, they did not possess in the absence of the obstruction. It was for the jury to say whether the new forces would or would not have been harmless except for the presence of the obstruction.

In the case of *Grimes v. Railway Co.* (Ind. App.), 30 N. E. Rep. 200, recently determined, the rule is laid down that—

" When two causes combine to produce an injury, both of which causes are proximate in their character,—the one being the result of culpable negligence, and the other an occurrence as to which neither party is at fault,—the negligent party is liable, provided the injury would not have been sustained but for such negligence."

A large number of authorities are cited which support the doctrine. The rule is followed in *Association v. Wilcox* (Ind. App.), 30 N. E. Rep. 202.

In *Campbell v. City of Stillwater*, 32 Minn. 310, it is said that,—

" Where several concurring acts or conditions of things —one of them, the wrongful act or omission of the defendant—produce the injury, and it would not have been produced but for such wrongful act or omission, such act or omission is the proximate cause of the injury."

In Shearman & Redfield on Negligence (section 39) the authors say:

" It is universally agreed that, if the damage is caused by the concurring force of the defendant's negligence and some other cause, for which he is not responsible, including the ' act of God' or superior human force directly

intervening, the defendant is nevertheless responsible if his negligence is one of the proximate causes of the damage, within the definition already given. It is also agreed that, if the negligence of the defendant concurs with the other cause of the injury in point of time and place, or otherwise so•directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated, or been bound to anticipate, the interference of the superior force which, concurring with his own negligence, produced the damage. But if the superior force would have produced the same damage, whether the defendant had been negligent •or not, his negligence is not deemed the cause of the injury."

In *Railroad Co. v. Reaney*, 42 Md. 136, Alvey, J., says:

"The efficient and predominating cause in producing a given event or effect, though there may be subordinate and dependent causes in operation, must be looked to in determining the rights and liabilities of the parties concerned."

The rule laid down by Mr. Cooley in his work on Torts (page 70) is that,—

"If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent."

In the note to page 71 the same author says:

"It is equally true that no wrong-doer ought to be allowed to apportion or qualify his own wrong; and that, as a loss has actually happened whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defense that there was a more immediate cause of the loss, if that cause was put in operation by his own wrongful act. To entitle such party to exemption, he must show, not only that the same loss *might* have happened, but that it *must* have happened if the act *complained of had not been done*." Citing *Davis v. Garrett*, 6 Bing. 716.

In the present case, while the passenger train was not put

in operation by the act of obstruction, both trains were operated by defendant, and it was for the jury to determine whether the presence of the obstruction did not give a different color and character to the other operations, and convert otherwise harmless incidents into fear-exciting agencies, and whether the presence of the obstructing cars did not produce the effect which caused the fright, the runaway, and the injury.

In 2 Thomp. Neg. 1084, it is said that—

" Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes, if such intervening causes were set in motion by the original wrong-doer."

It is insisted that the result was not one that could have been anticipated, but that is not the test of liability in cases like the present. The question what a reasonable man might foresee is of importance in determining the question of negligence; but when the act complained of is negligent *per se*, the person guilty of it is equally liable for its consequences, whether he could have foreseen them or not. *Smith v. Railway Co.*, L. R. 6 C. P. 21; *Grimes v. Railway Co., supra;* Shear. & R. Neg. *supra.*

The trial court properly submitted the question of the proximate cause to the jury, and we find no error in his instructions.

It is unnecessary to discuss the other questions raised. Upon an examination of them, we do not discover any prejudicial error.

The judgment is affirmed, with costs to plaintiff.

The other Justices concurred.