## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. POOL.†

(Court of Civil Appeals of Texas. Dec. 10, 1910. On Motion for Rehearing, Jan. 28, 1911. On Appellee's Motion for a Rehearing, March 18, 1911.)

1. RAILROADS (§ 304*)—ACCIDENT AT CROSSING—NEGLIGENCE.

Defendant's road crossed the main street of a town which had in force an ordinance prohibiting the obstruction of its streets by trains for more than five minutes. About 30 yards from the main line was a switch track. Plaintiff on approaching the crossing found a freight train blocking the street, and drove across the switch track, then stopped, and waited for the train to move on. The train obstructed the street for more than five minutes, and before it was removed a freight train came up behind plaintiff on the switch track, frightened his horse, and caused it to back across the switch track in front of the moving train, and plaintiff was injured by being struck by the train. *Held*, that defendant was guilty of negligence in obstructing the street crossing, and in causing its train to move along the switch track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 964; Dec. Dig. § 304.*]

2. RAILROADS (§ 326*)—ACCIDENTS AT CROSSING—CONTRIBUTORY NEGLIGENCE.

Where a train was standing on the main track at a crossing, plaintiff was not guilty of contributory negligence in driving over a switch track, 30 yards from the main track, so as to preclude recovery for injuries resulting from the frightening of his horse by the running a switch engine on the switch track while plaintiff was waiting for the departure of the train, which had stood there for more than five

minutes, in violation of an ordinance prohibiting the obstruction of a crossing by a train for more than five minutes at a time.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1037–1042; Dec. Dig. § 326.*]

3. RAILROADS (§ 350*)—ACCIDENTS AT CROSSING — OBSTRUCTION OF CROSSING — PROXIMATE CAUSE OF INJURY.

Where defendant railroad company permitted a train to stand on its main track at a crossing for more than five minutes, in violation of a city ordinance, and plaintiff drove over a switch track, 30 yards from the main line, and stopped in the intervening space to permit the train to pass, whereupon defendant ran a switch engine on the switch track and frightened plaintiff's horse, so that it backed into the switch engine and injured plaintiff, the question of whether the violation of the ordinance was the proximate cause of plaintiff's injury was properly submitted to the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

4. NEGLIGENCE (§ 141*)—CONTRIBUTORY NEGLIGENCE—INSTRUCTION.

That the court in designating several acts of plaintiff's, any one of which constituted contributory negligence, used the conjunctive form in stating the facts, instead of the disjunctive, did not render the instruction open to the objection that it required defendant to prove that plaintiff was guilty of all the acts enumerated in order to defeat recovery, where the instruction closed with the statement that if plaintiff was negligent in any or all of the respects named, and the same proximately contributed to his injuries, he could not recover.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 382–399; Dec. Dig. § 141.*]

5. RAILROADS (§ 351*)—ACCIDENTS AT CROSSINGS — CONTRIBUTORY NEGLIGENCE — INSTRUCTION.

An instruction that if plaintiff drove over defendant's track in front of an engine, or if plaintiff dropped one of his lines and thereby lost control of his horse, and it became frightened, he was guilty of negligence, and if plaintiff was negligent in crossing the track, and if plaintiff saw the train approaching or could have seen it, if he had looked and listened, and he failed to look and listen, was not open to the objection that it required defendant to prove all the acts enumerated in order to defeat recovery, where the court closed the instruction with the statement that, if plaintiff was negligent in any or all of the respects named, he could not recover.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

6. TRIAL (§ 251*)—INSTRUCTIONS—REQUESTS.

The court properly refused a requested instruction that, although the jury believe that the whistle on the extra train was not sounded, they could not find for plaintiff on that issue where that issue was not submitted in the main charge, and the court also instructed in a special charge requested by defendant that the jury could not find against defendant for any act of negligence, unless such act was submitted to them by the court as an act of negligence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

7. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment of error which was not accompanied by a sufficient statement of the evidence bearing upon the question to enable the court to decide it without a search of the record, or the reading of a statement made under another assignment which is quite lengthy, and contains a large amount of evidence and other matters not relating to the question, and which does not comply with the rules as to briefing a case, will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

8. TRIAL (§ 251*)—INSTRUCTIONS—REQUESTS.

A requested instruction that plaintiff had not pleaded as an act of negligence that defendant's employés discovered the peril of plaintiff in time to have avoided injuring him, and therefore not to find against defendant for so failing, was properly refused where the court had not submitted the issue of discovered peril.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

Talbot, J., dissenting.

Appeal from District Court, Hill County; W. C. Wear, Judge.

Action by E. B. P. Pool against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

E. B. Perkins, D. Upthegrove, and Scott, Sanford & Ross, for appellant. W. C. Morrow, for appellee.

TALBOT, J. This suit was instituted by the appellee, Pool, against the appellant railway company to recover damages for personal injuries sustained by him through the negligence of appellant's servants. The defenses pleaded were a general denial and contributory negligence. A jury trial resulted in a verdict and judgment in favor of the plaintiff for $1,000, and the defendant appealed.

The material facts are as follows: On the 13th day of March, 1909, plaintiff was traveling in his buggy along the main street and thoroughfare of the town of Mt. Calm, in Hill county, Tex. Mt. Calm, on the date mentioned, was an incorporated town, and had in force an ordinance prohibiting the obstruction or blockade of its street crossings by railway trains for more than five minutes. The street upon which the plaintiff was traveling was crossed by the railroad tracks of the defendant, and, to reach his destination, it became necessary for the plaintiff to cross said tracks at this point. There were two tracks across the street— the main line track and a switch track. These tracks were about 30 yards apart. As plaintiff approached the crossing, there was standing on the main line track a freight train of defendant, which extended entirely across the street and completely obstructed the same, so that plaintiff and others could not proceed along the street and across defendant's tracks. Plaintiff drove his horse and buggy in which he was riding across the switch track, and stopped to await the removal of the train from across the street. While so situated, another freight train of the defendant came up behind plaintiff on the switch track, and caused his horse to become frightened, and to back, plunge, and

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

cross the switch track in front of said moving train. As the horse crossed the switch track, plaintiff's buggy was struck by the engine drawing the train, and threw or knocked plaintiff out of his buggy; and severely injured him. At this time defendant's freight train was still standing on its main line track, and had been so standing for about 15 minutes. Defendant was guilty of negligence in obstructing the street crossing for the length of time and in the manner stated, and in causing its train to move along the switch track and collide with plaintiff's buggy at the time and in the manner in which those things were done. The plaintiff was not guilty of contributory negligence, and as a result of the defendant's negligence he sustained damages in the amount awarded by the verdict of the jury.

The court charged the jury that if "the defendant company, its servants, agents or employés, had caused a freight train to stop and to be left standing along its main track and across said street or thoroughfare upon which plaintiff was traveling, and the plaintiff, in the exercise of due care for his own safety, had crossed the side track of the defendant, and found his progress impeded by the said freight train standing upon said main track, and that the defendant's agents, servants and employés, run an extra train upon and along the said side track and at the time they so run the same, if they did do so, they, the servants of defendant controlling said extra train, knew that the plaintiff was with his horse and buggy between the said side track and the said freight train standing on the main track, and at said time and place and after they had seen the plaintiff, if they did see him, caused and permitted said extra train to run along said side track up to or past the place where said plaintiff was with his said horse and buggy, and caused plaintiff's horse to back and to rear and to plunge and to cross said side track, and said locomotive collided with his said buggy and knocked the plaintiff therefrom and injured him as alleged, and that said acts and conduct on the part of the defendant's agents, servants, and employés was negligence, as that term is hereinbefore defined, and that such injuries sustained by plaintiff, if any, were the direct and proximate result of the negligence of the defendant's servants, agents, or employés, if they were negligent, you will return a verdict in favor of the plaintiff." This charge is objected to on the ground that it erroneously submits to the jury the issue as to whether or not the stopping of the defendant's train across Main street was the proximate cause of plaintiff's injuries; the proposition being, in effect, that the undisputed evidence showed that the stopping of said train across the street was in no manner the proximate cause of plaintiff's injuries, and therefore the court erred in submitting an issue not raised by the evidence. We do not think the objection is well taken. The evidence did not in our opinion conclusively establish that the stopping and holding of defendant's train across the street upon which the plaintiff was traveling was "in no manner the proximate cause" of plaintiff's injuries. On the contrary, we believe that it was very clearly shown that such action on the part of the railway company was at least a concurring proximate cause of the accident and of its consequences to the plaintiff. The evidence is ample to show that the street crossing was blocked by defendant's train, in violation of an ordinance of the city of Mt. Calm, for more than five minutes; that plaintiff was forced to stop on account of such obstruction between the two railroad tracks, and in consequence thereof and of the negligence of defendant's servants in running the freight train on the side track, frightening plaintiff's horse, he received the injuries of which he complains.

The second assignment complains of the following portion of the court's general charge: "If you believe that the plaintiff saw said train approaching on said side track, or that he could have seen the same before he crossed said side track if he had looked and listened, and you believe that he failed to look and listen and you further believe that in such failure, if any, he was guilty of negligence as that term is hereinbefore defined, and you believe that under the conditions that surrounded him at the time he was guilty of negligence in crossing said side track and that the negligence of the plaintiff, if you believe he was negligent in any or all of the respects named, directly or proximately contributed to his injuries, if he was injured, you will return a verdict in favor of the defendant." The objection urged to this portion of the court's charge is that it is more onerous and imposes a greater burden upon the defendant than the law requires, in that it required the jury to believe before they were authorized to find for the defendant that plaintiff was negligent, not only in not looking, but also in not listening and also in crossing the side track; "whereas, the defendant was entitled to a verdict if the jury believed that the plaintiff was guilty of negligence in failing to look or to listen or in crossing said side track." In other words, the proposition is that in designating several acts of negligence on the part of plaintiff, any one of which would be sufficient to constitute contributory negligence, it is error for the court to use the conjunctive form in stating the facts in question, instead of the disjunctive, thereby placing a greater burden upon the defendant than is required by law. The language of the charge complained of is a portion of the fifth paragraph of the court's charge, and not a part of the sixth paragraph as stated in the brief. The entire paragraph is as follows: "Even though you may believe that the defendant's agents,

servants, and employés were negligent, as that term is hereinbefore defined, yet if you should believe from the evidence that the plaintiff drove his horse and buggy across defendant's side track in front of the engine, which was then moving on said side track, if said engine was so moving, to where the said train was standing on the main track of the defendant, and that in so doing the plaintiff was guilty of negligence as that term is hereinbefore defined, or if plaintiff dropped one of his lines by which his horse was controlled and thereby lost control of said horse, which had become frightened and you further believe that in so doing, he was guilty of negligence, if he did do so, as that term is hereinbefore defined, and you believe that under the conditions that surrounded him at the time he was guilty of negligence in crossing said side track, and that the negligence of the plaintiff, if you believe that he was negligent in any or all of the respects named, directly or proximately contributed to his injuries, if he was injured, you will return a verdict in favor of the defendant." It will be noticed that in the beginning of this paragraph of the charge the act of driving the horse and buggy across defendant's side track is submitted as a distinct act of negligence, which will authorize a verdict for defendant, and then follows the submission of issue of negligence in failing to look and listen; the paragraph concluding with the instruction that if the jury believed the plaintiff, under the conditions that surrounded him at the time of the accident, was guilty of negligence in crossing the side track, and, in effect, if they believed he was negligent in any or all of the respects named, and the same directly or proximately contributed to his injuries, to return a verdict in favor of the defendant. To the objection that the charge submitted the issue of the plaintiff's duty to look and listen for the approach of the defendant's train conjunctively, instead of disjunctively, it may be further said that "the duty to both look and listen comprehends the duty to do each of those things, and that the jury must have understood that, if appellee failed to do either, he would be guilty of contributory negligence, if such failure was against the dictates of ordinary prudence." Railway Co. v. Melville, 87 S. W. 863.

The fifth assignment complains of the court's refusal to give the following special charge: "You are instructed that although you may believe that the whistle on the extra train was not sounded, if you so believe, yet you cannot find for the plaintiff on this issue. There was no error in refusing this charge. The court did not submit in his main charge any issue with reference to whether or not the whistle on the train was sounded, and, if any such issue was made by the pleadings and evidence, the failure to submit it was equivalent to a withdrawal of it from the jury. Besides, the court instruct-

ed the jury in a special charge requested by the defendant that they could not find against the defendant for any act of negligence unless such act was submitted to them by the court as an act of negligence.

Appellant's sixth assignment of error is not accompanied by a sufficient statement of the evidence bearing upon the question sought to be presented therein for review to enable us to decide it without a search of the record, or the reading of a statement made under another assignment, to which we have been referred, of about 12 pages in length, and containing a vast amount of evidence and other matters not relating to said question. This does not comply with rules in regard to briefing a case, and this assignment will not be considered.

There was no error in refusing to give appellant's special charge, to the effect that the plaintiff had not pleaded as an act of negligence on the part of the defendant that defendant's employés discovered the peril of the plaintiff in time to have avoided injuring him and failed to do so; therefore not to find against defendant for so failing. The court did not charge the jury at all upon the subject of discovered peril, and we presume no such issue was raised by the evidence. In the state of the case the charge was properly refused.

Nor did the court err in refusing to direct the jury at defendant's request to return a verdict in its favor. The evidence was sufficient to warrant a verdict in plaintiff's favor, and the submission of the issue was imperative.

The assignments not discussed disclose no reversible error, and they are overruled.

We think no substantial injury has been done the appellant by any of the court's rulings, that the evidence sustains the verdict, and the judgment of the lower court is therefore affirmed.

### On Motion for Rehearing.

Further consideration of this case on appellant's motion for a rehearing has led us to the conclusion that we erred in affirming the judgment of the court below. We are now of the opinion that appellant's contention that the court's charge made the basis of its first assignment of error was erroneous, in that it authorized the jury to find that the act of the defendant in blocking the street crossing with the standing train on the main track of its road was an act of negligence proximately resulting in plaintiff's injury should be sustained. In disposing of the question in the original opinion, we held that it was shown that the stopping and holding of defendant's train across the street upon which the plaintiff was traveling was a concurring proximate cause of the accident and its consequences to the plaintiff.

Appellant's counsel strenuously contend in their motion for a rehearing that we erred in this holding and cite authorities from other

states which we think support the view maintained by them. If the precise question has been passed on by any appellate court of this state, it has not been cited, and we know of no such decision. But it has been in other jurisdictions. In Selleck v. Lake Shore & M. S. R. Co., 58 Mich. 195, 24 N. W. 774, the facts are very similar to the facts in the case at bar. Selleck, who was engaged in carrying passengers from a hotel to defendant's depot, was compelled to stop and wait for a freight train which obstructed the street for more than five minutes in violation of the statute to move on or divide and let him pass, when a passenger train came by, and the blowing of the steam and noise of the cars frightened his horses and they ran away, and he was severely injured. The jury was instructed as follows: "If the defendant did not obey the law, and did obstruct plaintiff's way there for more than five minutes at a time as complained of, and if the obstruction for the time over five minutes caused the injury, without any contributory negligence on the part of the plaintiff, then the plaintiff should recover. If in consequence of such blockade of the highway, as I have before named, the plaintiff was unavoidably detained and prevented from passing with his team along it to the depot until the passenger train, using the usual signals and making the ordinary noises of moving trains, arrived and passed west, and by reason of this unavoidable detention, and while waiting to pass over the crossing, the plaintiff's team became by those surroundings frightened and unmanageable, without the fault of the plaintiff, while he was using proper care and skill to hold and control them, and they overset the wagon and ran away, injuring the plaintiff and his property, the defendant must be held liable for the damages thereby resulting to him." The court held that the statutory negligence referred to in the charge in allowing the freight train to obstruct the street was not the proximate cause of Selleck's injury, and hence the instruction erroneous. Chief Justice Cooley in delivering the opinion of the court said: "The plaintiff had not by his declaration attributed his injury to the illegal detention, and, if he had, it would have been idle; for the particular injury of which he complained, namely, the fright and running away of his horses, could not have flowed from that detention as a proximate cause. The discussion of the question of proximate cause by this court in Lewis v. Railway Co., 54 Mich. 55, 19 N. W. 744, 52 Am. Rep. 790, is so recent and was so full that further discussion now could do little more than to go over the same ground, and is therefore quite unnecessary."

In Stanton v. Railway Co., 91 Ala. 382, 8 South. 798, plaintiff was traveling with his horse and buggy, and came to a railway crossing, which he found to be blocked by a train of cars. He waited for half an hour or more for the train to pass, and then his horse became frightened by an engine running up the side track. In holding that the fright of Stanton's horse by the operation of the engine and train on the side track was only the remote consequence of the obstruction of the crossing, the Supreme Court of Alabama, speaking through Mr. Justice Coleman, said: "It is a general principle that the wrongful and negligent acts complained of must be the efficient cause of the damage sustained. Whether directly or indirectly, the damage must be the natural consequences of the wrong. 5 Amer. & Eng. Enc. Law, 5. The fright of the horse and its running away was not the natural consequence of permitting the cars to remain on the crossing. This may have contributed remotely to that result by the delay of the plaintiff until another train reached the spot, but the efficient cause which frightened the horse, and made it run away, was the 'blowing off steam' and 'unusual noise' of the train which came up while plaintiff was waiting to cross. The damages resulting from the fright of the horse were too remote as a consequence of the obstruction of the public road to be visited upon the defendant corporation for that cause. We do not hold that a railroad may not be responsible for wrongfully or negligently delaying a person at a crossing, but the damages in such case must be the natural consequence of the delay, and not those produced by a subsequent, independent, intervening, and efficient cause." We think the cases from which the foregoing quotations are made state the law correctly upon the question we are considering, and should govern its decision. The obstruction of the street crossing by appellant's train as a ground of negligence which together with the alleged negligence of appellant's servants in running the other train up the side track would have authorized a recovery by the appellee, if such acts and conduct proximately caused his injury, is clearly and distinctly submitted in the court's charge. In so submitting the case, the trial court evidently entertained the view that the obstruction of the street crossing and the operation of the train on the side track could properly be considered as concurring proximate causes to which the injuries sustained by the appellee might be attributed, and we at first took this view of the matter; but that a concurring cause of an injury, in order to constitute actionable negligence, must have proximately contributed to such injury, cannot, we think, be questioned. That the obstruction of the street crossing over which appellee desired to cross by appellant's train was not such a concurring cause in producing appellee's injuries is affirmed by the cases above referred to, in which we concur, and we erred in the original opinion in holding to the contrary.

It is further contended, in effect, that the evidence was insufficient to warrant a finding

that the defendant's servants were guilty of such negligence in running the train on the side track as to render defendant liable for the damages sustained by the plaintiff as a result of his horse becoming frightened at said 'train. This question is not specifically raised by any assignment of error found in appellant's brief, and, in view of the fact that the case will be reversed and remanded for a new trial on other grounds, it will be sufficient to state what we conceive the law to be with reference to the care required of the operatives of railroad trains at public crossings to avoid injuring persons using or about to use such crossing. The law upon this subject is, as we understand it, that, while it is the duty of the servants of a railway company to keep a lookout for persons about to use a public road crossing or street to avoid a collision with them, they are not required to keep a lookout to discover horses that may be in close proximity to such crossings to avoid frightening them by the usual and necessary noises incident to a moving train. This is not true, however, if they undertake to make unusual and unnecessary noises. In Railway Company v. Boesch (Sup.) 126 S. W. 8, the rule is stated thus: "It is the right of the servants of a railroad company to move their trains with the usual and necessary noises, without keeping a lookout for frightened teams along the track. But, where they undertake to make unusual and unnecessary noise at crossing of a public road or street, they should exercise circumspection, and see that there are no teams in position to be frightened by such unusual sounds." If, however, the servants of a railway company discover that a horse or team hitched to a buggy or other vehicle near its track is becoming frightened at the train, they must refrain as much as possible from making any noise that is calculated to increase the fright of the animal, and, if necessary to avoid a collision, to stop the train as promptly as the same can be done, consistent with the preservation of the train and the safety of those on board, by the use of all the means at hand. And, while the sounding of the whistle and ringing of the bell of the engine is required at certain times and places, yet the doing of either should be refrained from when it is discovered that teams have or will become frightened thereat and probably do injury. Railway Co. v. Edwards (decided by this court, Jan. 7, 1911) 134 S. W. 264. On the other hand, the failure to give the statutory signals at the times and places required will constitute negligence and a person injured as a proximate result thereof may have his action against the railway company for such damages as he sustains on account of such negligence.

It is further contended by appellant that the court erred in refusing to give the following special charge requested by it: "You are instructed the plaintiff has not pleaded as an act of negligence of the defendant that defendant's employés discovered the peril of the plaintiff in time to have avoided the injury to plaintiff, if any, and failed to do so, and you will therefore not find against the defendant for so failing, even though you may believe it so failed, if you so believe." We disposed of the assignment presenting this contention in the original opinion by saying that the court did not charge the jury at all upon the subject of discovered peril, and therefore we presumed no such issue was raised by the evidence. We will now state that we are inclined to think that the allegations of the appellee's petition are sufficient to present the issue of discovered peril, and that appellant's motion for a rehearing points out evidence which authorized the submission of that issue as one of fact for the determination of the jury. We are still of the opinion, however, that, inasmuch as the court failed to submit the issue of discovered peril at all, such issue was thereby practically withdrawn, and that we ruled correctly in overruling appellant's assignment of error complaining of the court's refusal to give its charge upon that subject.

The record further indicates that upon another trial it may become an important issue in the case whether or not the servants of the railway company were guilty of negligence proximately causing the appellee's injuries in running the train on the side track at a greater rate of speed than allowed by the ordinance of the city of Mt. Calm.

Appellant's motion for a rehearing is granted, and the judgment of the court below is reversed and the cause remanded.

### On Appellee's Motion for a Rehearing.

Upon a reconsideration of this case on appellee's motion for a rehearing, the majority of the court have become convinced that the case was correctly decided in the original opinion, and that appellee should be granted a rehearing and the judgment of the court below affirmed. It will therefore be so ordered. The writer, however, feels constrained to dissent from this conclusion. The evidence utterly fails to show that the freight train standing upon appellant's main track and across the street appellee was traveling in any way caused appellee's horse to become frightened. Its only effect was to cause the detention of appellee until the train was run in on the side track, and the sole cause of the horse becoming frightened was the operation of this train on that track. As said in Stanton v. Railway Co., cited in the opinion on appellant's motion for a rehearing, "the wrongful and negligent acts complained of must be the efficient cause of the damage sustained. Whether directly or indirectly the damage must be the natural consequences of the wrong." The fright of appellee's horse and the injury sustained by him was not in my opinion the natural

consequence or a proximate result of permitting the freight train to block the crossing. This may have contributed remotely to such results and injury, but the only proximate cause which frightened the horse was, as said, the operation of the train on the side track. It is a well-established rule that an act, though negligent, which did not proximately cause or contribute to the injury complained of, furnishes no ground for an action. So also a condition of affairs, although negligent, cannot be considered as a proximate cause when there is an independent intervening agency which actually brings about the accident. The rule is expressed in 29 Cyc. p. 496, thus: "A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury, a distinct, successive, unrelated, and efficient cause of the injury. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause [citing numerous decisions, among them, Missouri, etc., R. Co. v. Dobbins, 40 S. W. 861]. And if an independent negligent act or defective condition sets into operation the circumstances, which because of the prior defective condition results in injury, such subsequent act or condition is the proximate cause." In Railway Company v. Gerald, 128 S. W. 171, it is said: "If there intervenes between a remote cause and the injury a distinct, unrelated, and efficient cause, or if no injury would have occurred, notwithstanding the condition, but for such independent cause, such remote cause does nothing more than furnish the condition, and cannot be held to be either the sole or concurrent proximate cause."

The pleadings and evidence in the case of Selleck v. Railway Company, cited in the opinion on appellant's motion for rehearing, were very different on the second appeal, as disclosed by the report of that case in 93 Mich. 375, 53 N. W. 556, 18 L. R. A. 154, from the pleadings and evidence as shown on its first appeal. As shown on the second appeal, the effect of the blockade was to cut off the view of the immediate cause of the fright of Selleck's horses, and the court said: "In the present case there was no intervening cause. The obstruction of the highway was a continuous breach of duty. It was a cause operating at the time of the injury. The smoke and steam were concurrent, rather than intervening, causes. They were contemporaneous. They enveloped and environed the freight train, and produced a condition of the cars. It was for the jury to say whether the fright of the horses was caused by the appearance of the freight cars, sur-

rounded as they were. Again, if the team was frightened by the noise and steam and smoke under the circumstances, it was for the jury to say under testimony clearly tending to show that the team was used to passing trains and their attendant incidents whether it was not the presence of the freight train across the highway, obscuring the origin of the steam and smoke and noise, that was the cause of the fright and injury." No such condition or situation as is described in the Selleck Case on the second appeal existed in the case at bar. The appellee Pool testified: "I had been standing between the switch track and the main track some three minutes when I saw this engine on the switch track. The first thing that attracted my attention to it my horse threw up his head up and looked down south, down the track, and, when I looked in that direction, I saw the train. When I first saw it, it was moving pretty fast, but I could not estimate the speed of it. I reckon it must have been 60 steps, 60 yards away when I first saw it. I never heard the bell being rung on that engine, nor did I hear the whistle blow. * * * Right after my horse throwed his head up, he run right back, and I saw he was going to back back into the thing, and I thought I would pull her around, and run her across the track on the south side, and I was going off on the south side. She (meaning the horse) got scared at the train—the train that was on the switch track on the Cotton Belt Railroad. I was about 20 yards from the switch track when I stopped, something like that. I was about the same distance from the main line. The train on the main line was standing still. It did not move at all at the time my horse got frightened. The horse had its back to the train that was moving, and was facing the train that was standing. It turned away from the train that was standing, and wheeled right around that way and run back down the track towards the train that was coming in, run across ahead of it."

I think appellee's motion for a rehearing should be overruled, and that the judgment of the court below should stand reversed and the cause remanded for a new trial, but in accordance with the views entertained by the majority of this court said motion is granted, and the judgment of the court below affirmed.