SMITH v. MT. CLEMENS SUGAR CO.

1. MASTER AND SERVANT—PERSONAL INJURIES—CONTRIBUTORY NEG-LIGENCE—DEFECTIVE LADDER.
Where defendant's servant had used a ladder for the purpose of adjusting a valve several times a day, during the month preceding his injury, and it was shown to be necessary to make the adjustment while the machinery was in motion, he was not chargeable with contributory negligence because he made use of a ladder which had broken and had been mended, or because he did not stop the machinery, having sustained injuries by falling into unprotected gears, about three feet to the left of the ladder which gave way.

179 MICH.—7.

2. SAME.

Nor was the employer entitled to complain of instructions which submitted the question to the jury whether the gearing that was situated about nine feet above the floor was so safeguarded by reason of its position as to adequately comply with Act No. 285, Pub. Acts 1909, § 15 (4 How. Stat. [2d Ed.] § 4023).

3. SAME—PROXIMATE CAUSE.

It could not be determined as a question of law that the breaking of the ladder, not the failure to safeguard the gears, was the proximate cause of the injury.

4. DAMAGES—LOSS OF ARM—EXCESSIVE VERDICT.

$3,800 was not an excessive verdict in favor of a plaintiff who had an expectancy of more than 12 years, for the loss of a portion of his arm, unfitting him for manual labor, by which he had been accustomed to support himself, also causing him present and probable future pain and humiliation.

Error to Macomb; Tucker, J. Submitted November 26, 1913. (Docket No. 93.) Decided March 26, 1914. Rehearing denied June 4, 1914.

Case by George W. Smith against the Mt. Clemens Sugar Company for personal injuries. Judgment for plaintiff, and defendant brings error. Affirmed.

*Thomas A. E. Weadock,* for appellant.

*John A. Weeks,* for appellee.

Plaintiff, a man 63 years of age, was employed by defendant company during the campaign of 1911 to look after the juice pumps at its factory. These pumps, four in number, were located upon the ground floor of the factory in a room 20x70 feet. Each pump was connected with a tank 8 feet high, situated on the same floor. Above the tanks there was installed a lime conveyor—an iron trough 2½ feet in diameter, through which ran a spiral attachment, which pushed the refuse lime into the mixer where it was dis-

charged into the sewer. In order to facilitate the movement of this refuse matter, a one-inch stream of water was permitted to flow through the conveyor. The flow of the water was controlled by a valve about 9 feet above the floor and about 2½ or 3 feet from a cog gearing which was located on top of one of the tanks and through which power was supplied to the conveyor. Plaintiff, who worked upon the night shift, found it necessary to increase the flow of water through the conveyor, as the refuse was not moving freely towards the outlet to the sewer. To enable him to accomplish this purpose, he placed a ladder against the top of one of the juice tanks; the foot of the ladder resting against a column in the aisle. He then mounted the ladder, reached the valve, and turned on the water. Letting go his hold upon the valve, he started to back down the ladder, when one of its sides gave way, causing him to fall. He threw out his right hand to grasp the shaft. The left hand was instantly drawn into the gear and was so mutilated as to render amputation, between the wrist and elbow, necessary.

The accident happened December 9th, some two months after the campaign for that season opened. Plaintiff had worked for defendant some five seasons, but, in care of the juice pumps at the station where he was injured, he had started at the opening of the 1910 or 1911 campaign. He introduced evidence tending to show that, when he entered upon his new employment, Anderson, who had the day shift, was told by the superintendent to instruct him in his duties; that Anderson showed him how to manage the pumps and told him to turn the water on and off in the conveyor as occasion required; and, further, that Anderson showed him how to place the ladder in order to reach the valve controlling the flow of water. The power operating the gear in question was transmitted through a friction clutch. Evidence was introduced tending to show that this clutch was fre-

quently out of order, and that on the night in question plaintiff had attempted to operate it without success; that its faulty condition had been frequently reported and futile attempts made to repair it. Defendant introduced evidence tending to show that it was intended that the water should at all times pass through the conveyor (except when the factory was closed or the machinery was stopped), and that it was no part of plaintiff's duty to meddle with the valve in question.

The declaration contains many allegations of negligence, but the case was submitted to the jury upon a single issue, viz., whether the defendant was liable for failure to properly guard the gears in question under the provision of section 8 of Act No. 113 of the Public Acts of 1901, as amended by Act No. 285, § 15, of the Public Acts of 1909 (2 How. Stat. [2d Ed.] § 4023). The particular language follows:

"All gearing or belting shall be provided with proper safeguards, and whenever possible machinery shall be provided with loose pulleys. All vats, saws, pans, planers, cogs, set-screws, gearing and machinery of every description shall be properly guarded when deemed necessary by the factory inspector."

Upon this question the court charged as follows:

"I think it was the duty of the factory owners, under this law, to cause to be safeguarded, or covered, all gearing situate in any place where the duties of the workmen about the premises require them to come into the close vicinity of the gearing. I do not think that the statute requires, or is intended to require, the covering or safeguarding of the gearing when so situated as to make it obviously safe so far as the workmen are concerned. It then becomes a question of fact in this case for you to determine what the duties of the plaintiff were. If his duties, as you find them to have been, and the duties of other workmen about the premises, require them to frequently ascend to the top of these juice tanks in the vicinity of this gearing, for the purpose of performing their accus-

tomed service, then I think this gearing should have been covered. If, on the other hand, you find as a matter of fact that it was no part of this plaintiff's duty, or that of other workmen, to work about the gearing in question in such a way as to possibly endanger their safety, then it would be no part of defendant's duty to cause this gearing to be covered, or to safeguard it, and in this connection you are instructed that, while an employee must ordinarily be held to have assumed all risks incident to his employment, he cannot be required to assume the risks of injury from gears which the statute requires should be covered, and if you find, under the instructions I have given you, that this gearing was so situated that it should have been covered, then you will consider that risk of injury, which might result from the absence of a guard to the gearing, was not a risk assumed by the plaintiff, when he entered upon his work in the campaign of 1911. * * * If you find that the gearing should have been protected on account of the fact that duties of employees of the defendant company required them to perform work in such close vicinity thereto as to raise a fair possibility of accident occurring to the worker, and you find that the plaintiff's duty as laid down to him by Anderson required him to ascend the ladder in question on the night in question, or at different times, for the purpose of turning on or off the water from or into the conveyor, and you find that absence of covering or safeguard to this gearing caused the accident, then you would be justified in finding the defendant guilty of negligence, and the plaintiff would be entitled to recover, provided you also find that the plaintiff himself at the time of the accident was in the exercise of due care."

Plaintiff recovered a judgment for $3,800 which defendant reviews in this court by writ of error.

BROOKE, J. *(after stating the facts).* It is first argued by counsel for appellant that plaintiff should be held guilty of such contributory negligence as would debar him from recovery: *First,* in meddling with the conveyor at all. This view is predicated

upon the assumption that it was no part of plaintiff's duty to regulate the flow of water through the conveyor. Both Anderson (who had the day shift) and plaintiff testified that they attended to the water as the conditions in the conveyor made it necessary; that several times in each shift a change was made by one or the other of them; and that this was done by Anderson in obedience to instructions from the superintendent and by plaintiff in accordance with Anderson's instructions. Defendant denied ever having given such orders. This conflicting testimony raised an issue as to the fact which was submitted to the jury.

It is further claimed that plaintiff should have shut off the power before ascending the ladder, and, if unable to work the clutch, should have reported the facts to his superior; and, further, that he was negligent in using a ladder which had been broken and mended. The record shows, according to plaintiff's testimony, that plaintiff had used the same ladder for the same purpose several times each night during the preceding two months, and that (the clutch being frequently out of order) it was necessary to adjust the valve while the gears were in motion. We are of opinion that it should not be said as a matter of law that plaintiff was guilty of contributory negligence. It is true that the exposed gears were in plain view, but they were about three feet to the left of the ladder. Whether a reasonably prudent man would have acted as plaintiff did was a question for the jury which was submitted to them under appropriate instructions.

It is next urged that defendant's motion for a directed verdict should have been granted upon the ground that under the facts in this case the statute relied upon cannot apply, and therefore that no negligence on the part of defendant was shown. It is said that the gears in question, situated as they were some 9 feet from the floor, were safeguarded by their posi-

tion.  If, as the evidence introduced by plaintiff seems to show, it became necessary for one or other of the employees of defendant many times each day to mount a ladder and attend to a portion of the work within three feet of the exposed gearing, we think it can scarcely be said, as a matter of law, that the "position" was an adequate safeguard.  Indeed, it may well be doubted whether an exposed gearing can be placed in any position which as a matter of law would be considered as an equivalent to the statutory safeguard.  *Tabinski* v. *Manufacturing Co.,* 168 Mich. 392 (134 N. W. 653).  But at all events the charge upon the subject quoted *supra* was as favorable to defendant as it was entitled to demand.

We have examined the cases from New York cited and relied upon by defendant; but, in view of our own decisions under this statute, we must decline to follow them.

It is claimed that the breaking of the ladder was the proximate cause of plaintiff's injury, and as the court below held that plaintiff used it, in the absence of negligence on the part of defendant, he should not have been permitted to recover.  This claim is untenable.  See *Selleck* v. *Railway Co.,* 93 Mich. 375 (53 N. W. 556, 18 L. R. A. 154) ; *Swick* v. *Cement Co.,* 147 Mich. 454 (111 N. W. 110).

Were the damages ($3,800) excessive?  Upon this point defendant relies upon the case of *Detzur* v. *Brewing Co.,* 119 Mich. 282 (77 N. W. 948, 44 L. R. A. 500), where a judgment for $10,000 was reversed unless the sum of $6,500 was remitted.  Plaintiff has an expectation of life of more than 12 years. He has lost a portion of his arm.  He is unfitted for all kinds of manual labor, by which alone he has heretofore maintained himself.  He testified to continued pain and suffering.  Added to these facts, it should be borne in mind that, for the balance of his life plaintiff must suffer from the humiliation of going about

among his fellows in a mutilated condition. While the judgment is a liberal one, we do not think it should be called excessive within the legal meaning of that term.

Errors are assigned upon the admission and exclusion of certain testimony. These have been examined and have been found to be without merit.

The judgment is affirmed.

MCALVAY, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. KUHN, J., did not sit.