# FRANK A. RETAN v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

*Railroad companies—Negligence—Defective walk across track at street crossing—Contributory negligence— Excessive damages.*

1. Where a railroad company, acting under a notification from the common council of a village, constructs a sidewalk across its right of way at a street crossing, and for years assumes to keep the walk in repair, it becomes its duty to keep the walk in a reasonably safe condition for public travel; citing *Stewart v. Railway Co*, 89 Mich. 315.

2. The testimony is held sufficient to authorize a finding by the jury that, though the defendant had no actual notice of the hole in the walk in which plaintiff's foot was caught, it had existed long enough to charge the defendant with such knowledge.

3. The question of plaintiff's contributory negligence in returning to the crossing in face of the approaching train, which was nearly 600 feet away when he stepped upon the track, is held to have been properly left to the jury.

4. It cannot be said that a person traveling along a way must at all times look where he steps or be charged with negligence as matter of law, it being a question for the jury under all of the testimony.

5. A judgment for $30,000 in a negligence case, as compensation for the pain and suffering endured by the plaintiff, and the loss to him for the remainder of his life of both feet, will not be reversed upon the ground that the damages awarded are excessive.

Error to Lenawee. (Lane, J.) Argued November 15, 1892. Decided December 22, 1892.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*C. E. Weaver (George C. Greene* and *O. G. Getzen-Danner,* of counsel), for appellant, contended:

1. If defendant constructed the crossing in the way and manner in general use by and among prudent railway men and companies, it had fulfilled its whole duty in that regard, so far as such construction was concerned; citing *Railroad Co. v. Coleman,* 28 Mich. 448; *Railroad Co. v. Judson,* 34 Id. 506; *Railroad Co. v. Huntley,* 38 Id. 537; *Mitchell v. Railway Co.,* 51 Id. 239; *Hagan v. Railroad Co.,* 86 Id. 615; and reasonable safety is all that the law requires; citing *Harris v. Township of Clinton,* 64 Mich. 457; *Shippy v. Village of Au Sable,* 65 Id. 501; *Lombar v. Village of East Tawas,* 86 Id. 14; *Lafflin v. Railroad Co.,* 106 N. Y. 136; *Loftus v. Ferry Co.,* 84 Id. 455; *Burke v. Witherbee,* 98 Id. 562; *City of Indianapolis v. Cook,* 99 Ind. 10.

2. In an action like the present, there can be no recovery if the plaintiff's negligence contributed in any way to the injury complained of; citing *Pennsylvania Co. v. Gallentine,* 77 Ind. 322, and authorities cited on page 329; and negligence consists in the omission or commission of some act which a reasonable and careful man would or would not do; citing *Howe v. Young,* 16 Ind. 312.

3. A city is not an insurer against accidents upon its streets and sidewalks. It is simply required to keep its streets and sidewalks in a reasonably safe condition for persons traveling in the usual modes by day and night, and *using ordinary care.* A man may stumble and fall anywhere, in a house or in a street, but because he happens to fall in the street it by no means follows that the city is responsible for the injury he receives. There are slight inequalities in sidewalks, and other trifling defects and obstructions, against which one may possibly strike his foot and fall, but if injury can be avoided by the use of such care and caution as every reasonably prudent person ought to exercise for his own safety, the city will not be liable; citing *Higert v. City of Greencastle,* 43 Ind. 574; *Raymond v. City of Lowell,* 6 Cush. 524; *Cornman v. Railway Co.,* 4 Hurl. & N. 781; *City of Aurora v. Pulfer,* 56 Ill. 270; *Ring v. City of Cohoes,* 77 N. Y. 83; *Macomber v. City of Taunton,* 100 Mass. 255; Dill. Mun. Corp. § 1017.

4. The defendant, having constructed this crossing in the same manner as other prudent men and railway companies, if liable at all, is only liable for failure to keep it in reasonably proper repair, and the burden of proof is upon the plaintiff to show:

   *a*—That the walk was so much out of repair as to be dangerous to pedestrians using due care.

b—That defendant had actual notice of this dangerous defect; long enough before the accident to have made the necessary repairs, or that it had existed for so long a time, and been so conspicuous, that 'the defendant ought to have known of it and repaired it.

5. We apprehend that the same rules would apply to these questions as against railroads as are applied in actions against municipalities, which are not required to keep their sidewalks in a .perfect condition, but are liable only when the same are not reasonably safe, no liability attaching because of latent defects, unless the structure is of such a character that a failure to examine would in itself be negligence; and the defect must be such as to suggest unsafety; citing *Lombar v. Village of East Tawas*, 86 Mich. 14; *Tice v. Bay City*, 84 Id. 461.

6. In support of the claim for a reversal on the ground that the damages awarded are excessive, counsel cited *Heddles v. Railway Co.*, 74 Wis. 239; *Railroad Co. v. Young*, 83 Ga. 512; *Spaulding v. Railroad Co.*, 12 L. R. A. 698; *Smith v. Railway Co.*, 84 Ga. 698; *Railway Co. v. Barker*, 39 Ark. 491; *Railroad Co. v. Moore*, 31 Kan. 197; *Brown v. Railway Co.*, 7 Utah, 288; *Massadillo Railway Co.*, 89 Tenn. 661.

*Watts, Bean & Smith* and *L. R. Pierson*, for plaintiff.

LONG, J.   Plaintiff recovered a judgment against the defendant for $30,000 damages for negligent injuries. The negligence complained of was in allowing a sidewalk which crosses defendant's main track, and extends along the side of a public street in the village of Hudson, to become out of repair, and dangerous to public travel, and by means of which the plaintiff's foot was caught and fastened in said walk  between one of the planks and one of the rails of defendant's track, and while being so held one of defendant's trains of cars ran over him, cutting off both his feet.

The main track of defendant's road, extending easterly and westerly, crosses Main street in that village at a very acute angle.   A sidewalk 6 feet wide has been maintained on the north side of Main street for some distance for over 30 years by the owners of the abutting property, and by the village at the street crossings.   The defendant com-

pany has maintained this walk over its right of way since 1868. In that year the village council, by resolution, directed the building of a sidewalk on the north side of Main street between Tiffin and High streets, and notified the defendant to build that portion across its right of way, which it did, and has ever since maintained it. The planks of the walk inside the railroad tracks run parallel with the rails. Crossing the track at such an acute angle, the extreme length of the plank sidewalk is about 27 feet, though the walk is only 6 feet wide. The planks are laid away from either rail from 2 to $2\frac{1}{4}$ inches, to allow the flanges of the car wheels to pass between them and the rails. The plank in the walk next the south rail had become split at the west end, so that a piece had been torn out, leaving an open space between the rail and the plank $3\frac{5}{8}$ inches wide at the end, extending 14 inches along the plank, and narrowing down to 2 or $2\frac{1}{4}$ inches.

On January 3, 1891, the plaintiff, while passing along this walk, dropped his mitten near the center of the planking between the rails. He passed beyond the rails about 25 feet, when, missing the mitten, he retraced his steps to get it, and, arriving at the west end of the planking, he turned and saw the fast mail train of defendant approaching from the west. As he turned towards the west, his foot, which was resting upon the south rail of the defendant's track, slipped off, and was caught in this space left by the broken plank. He tried to extricate his foot, and, finding he could not do so, he signaled the train to stop. The train was then at or near what is called the "Stone Bridge," about 584 feet away, and running, as the engineer testifies, about 12 miles an hour, but gaining speed. The engineer, as soon as he saw the plaintiff was caught, made every possible effort to stop the train, but was unable to do so until the engine and tender had run over the plaintiff, and cut off the left foot above the ankle and crushed

the right one.    Both feet were subsequently amputated; the left one near the knee, and the right forward of the heel.

It appears that the plaintiff saw the train coming before he crossed the track the first time, and knew what train it was.    He was accustomed to see this train every day. As he left High street on his route west, and as he reached the track, he could see west upon the track several hundred feet distant; and as he crossed over, the train was some 800 feet distant from the crossing.    Plaintiff was born and brought up in the village, and had lived there nearly all his life, and had been accustomed to pass along this walk; but he says he had never noticed its condition or this defect.    When stopping and turning to look at the approaching train, he did not notice where he put his foot, but says it must have been on the rail, and from there slipped into this hole.    This walk between the rails had been twice renewed, the last time about seven years before the accident.    The testimony shows that the hole in this plank had been there from six to nine months, and that several other persons, prior to plaintiff's injury, had their feet caught in the same hole, and some of them had considerable difficulty in extricating them.

The declaration charges the breach of duty as follows:

"But the defendant, disregarding its said duty in that behalf, on the day last aforesaid, and for a long time, to wit, three months prior thereto, carelessly and negligently permitted and allowed said sidewalk where it crossed the track of said defendant to become decayed, broken, and out of repair, and one of the planks adjoining and next to the south rail of said track, and between the two rails of said railroad track, to become split and broken, so that there was a space and opening between the said rail and said plank large enough to receive a man's shoe and foot, and into which a person walking along said walk and across said track was liable to step and be thrown down, and the foot fastened and injured; and which said hole had been

left by defendant to remain and be unrepaired and in a dangerous condition for a long space of time, to wit, sixty days, prior to the 3d of January, 1891."

· 1. It is claimed that, under the charter of the defendant company and the general railroad laws of the State, no duty is cast upon the defendant company to construct or maintain a sidewalk across a public street, either in a township, village, or city.

While it is true that neither the charter of the defendant company nor the general railroad laws of the State provide in express terms for the building of a sidewalk, as such, across any public street, yet it is provided by the defendant's charter that whenever the company shall construct its road across a public highway, it shall restore it "to its former state, or in a sufficient manner not unnecessarily to impair its usefulness." In the present case, however, we need not discuss or consider that question. The defendant company, acting under the notification of the common council of the village, did construct the crossing there, and for years has assumed the duty of keeping it in repair. By this act it invited people to pass over it, and it has thus become its duty to keep it in a reasonably safe condition for public travel. As was said in *Stewart v. Railway Co.*, 89 Mich. 315, 328:

"It was a structure built upon its own land, and, by its nature and use, was a continual invitation to those lawfully having a right to cross from one side to the other at that place to enter upon it, and cross there; and so long as this invitation, thus impliedly given to such persons, continued, it was the duty of the defendant, independently of any contract, to see to it that it was safe for the purposes implied by the invitation."

This principle is supported by abundant authority. *Nichols' Adm'r v. Railroad Co.*, 83 Va. 99 (5 S. E. Rep. 171).

The same principle was involved in the case of *Cross v. Railway Co.*, 69 Mich. 363, and the cases there cited.

In *Spooner v. Railroad Co.*, 115 N. Y. 22 (21 N. E. Rep. 696), the court held the defendant company liable for the injury upon the ground that it had assumed the duty of maintaining the crossing.

2. It is claimed that there was no such defect in the planking between the rails as to make the defendant liable. The action is not based upon the faulty construction of the crossing, but in permitting it to become defective, in that a hole was permitted to remain for a long space of time unrepaired. In the construction a space was left for the flanges of the car wheels to pass along the side of the rail. No negligence is claimed on that ground, but that, when the plank became broken and split off sufficient to admit a person's foot, it was not reasonably safe. It was admitted on the trial by the track hands of the defendant company that, if the plank had been examined, the defect would readily have been seen. No claim was made that any such examination had been made for a long space of time, and no particular examination for the last six years prior to the injury, except such as could be made by the track hands passing over the crossing on a hand-car. Some of defendant's witnesses—and especially the road-master—testified that the planking next the rail would be nearly used up by the passing trains in about six months, and yet no inspection of the walk is claimed to have been made, except that above stated by the track hands. There was abundant evidence on the trial that the defect existed, and that the defendant company, by the least care, would have discovered it.

3. Error is assigned upon the refusal of the court to give several requests to charge. The questions so raised are fully disposed of in what has already been said. The

court submitted the question of defendant's negligence to the jury as follows:

"Before the plaintiff is entitled to a verdict at your hands here, he must convince you by a preponderance of the evidence—you must be convinced by a preponderance of the evidence in the case—that the company were negligent in permitting this walk to be in the condition which it was in at the time the accident occurred; that that negligence was the direct cause of the injury which the plaintiff claims to have suffered; and that he himself (the plaintiff) was not negligent in such a way as to contribute himself to the injury which occurred. I say you must be satisfied, before a verdict can be rendered for the plaintiff, of each and all of these propositions. Your first inquiry will naturally be as to whether the defendant was negligent in permitting this walk to be in the condition in which it was; and upon that question you are instructed that the company are bound to exercise that degree of care in the construction and operation of this road as is common to railway companies; that degree of care which, in view of the circumstances, would be required by prudent management. If this defect, which is charged in the plaintiff's declaration,—and which is only that the company permitted this hole to be there next to the rail, as has been described,—if this defect were such a one as that ordinary care on the part of the railroad company would not discover it, and they had no knowledge of it, then there would not be, in the law, negligence such as that the defendant would be held responsible in this action. On the other hand, if it was such a defect, if the defect was the cause of the injury, and was such a one as that by careful and prudent management on the part of the company it should have been discovered, then there was negligence in the company in permitting the place to be there, whether they had actual knowledge or not.

"The railroad company are not insurers; the law does not require that they be insurers against accidents, or against injuries being received by persons and individuals who may come upon their property, or in the vicinity of it. There is danger necessarily incident to the business of managing and operating a railroad company, which all persons are bound to take cognizance of, such as are naturally incident to it; but the law requires that, as I have said, the company shall have in mind the nature of

the business which they are carrying on, and shall take such precautions as the nature of it and the perils which are incident to it would seem to require,—the ordinary care and prudence which railway management and experience has generally shown are proper. If, then, the company were not negligent in permitting this defect to be in this walk, under these instructions, they are not responsible. If they were,—if they failed to perform the duty which I have stated to you was put upon them under the law,—and failed to exercise that degree of care and prudence which is common in prudent railway management, then there would be negligence."

This was a fair submission of these questions to the jury under the evidence in the case.

4. It is claimed that the defendant had no notice of the defect. The testimony shows that the defect had existed for several months; that many persons had noticed it, and several persons, prior to that time, had been caught in the same way at that place, and in the same hole. This testimony was all before the jury, and from which they may well have found that, though the company had no actual notice of the defect, it was its duty to have known it, and that it would have known it had it exercised any care. It was competent to show that others were caught in the same hole prior to the time of plaintiff's injuries. *Lombar v. Village of East Tawas*, 86 Mich. 14.

5. It is claimed that the plaintiff was guilty of contributory negligence in returning to the crossing in the face of the approaching train, and especially as he testified that he did not look where he stepped. Several requests to charge were submitted to the court upon this claim, and refused. The court, under the general charge, left that as a question of fact for the determination of the jury, and, as we think, very properly. It appeared that at the time he stepped upon the track the train was nearly 600 feet away. He had seen the train pass there every day for years, and knew the rate of speed it was going. He would

undoubtedly have had plenty of time to have passed over and got his mitten, had it not been for the defect, for which the defendant was solely in fault. We cannot say as matter of law that his conduct was such as to charge him with negligence. It is not like the case of one who attempts to cross a railroad track with a team in the face of an approaching train. A very careful and prudent person might have attempted the same thing. It was not a peril voluntarily and unnecessarily assumed, within the meaning of the cases cited by counsel, but an act which under the testimony the jury had a right to pass upon, and determine whether it was negligent or not. Nor can it be said as matter of law that the plaintiff was negligent in not looking where he stepped. He had a right to believe that the crossing was safe. He had passed over it a great many times, and had not had his attention called to this defect. It was a way provided by the defendant for him and others of the public to pass, and it cannot be said that a person traveling along a way must at all times look where he steps or be charged with being negligent. It was a question for the jury.

6. It is claimed further that the jury were influenced in awarding so large a verdict by the language of plaintiff's counsel, used in the closing argument. The following portion of such argument is selected, and error assigned upon it:

"If you find, gentlemen of the jury, that this defendant ought to pay this boy, I hope you will not quibble over the amount. The good Lord knows that he cannot have too much; and yet, gentlemen, as has already been said before you, we do not want you to give such an amount that it might shock the common sense of the community and people generally; but we want enough, and it is for your judgment, and yours only, as to how much that shall be. Nobody else has a right to interfere. Ah, gentlemen, nobody else will interfere."

When taken in connection with the other portion of the argument, which is set out in the record, we think counsel cannot claim that anything improper was said, even if the portion of which complaint is made can be said to be improper. Counsel, continuing his remarks to the jury upon that subject, said:

" Disabuse yourselves from sympathy; disabuse yourselves from any feeling that you want to do for him,—whether it is right or wrong,—if it is possible that you have any such feeling. Come down to the law and the facts as the court will give them to you. Let it strike where it will. If it leave this poor boy where he is, under the evidence, then so be it. But don't give him a pittance. Don't give him what, in proportion to the injury he has suffered, would be no compensation. We want such an amount as this brother right here will recognize as a fair and just verdict. Give such a verdict as you believe Clement E. Weaver himself would give, were he one of you."

It is not claimed that there was any misstatement of fact or law, and certainly the language would not have a tendency to inflame the minds of the jurors against the corporation. They were told to disabuse their minds from all sympathy, and to give such an amount as would not shock the common sense of men generally; and to this was added the request to give such a verdict as the attorney of the defendant company would give if he were on the jury. It is true that there may have been an appearance of frankness and fairness on the part of counsel, used as a cover while he was attempting to arouse the sympathy of the jury for the plaintiff's condition; but we are not prepared to say that the language was so far prejudicial as to call for a reversal of the judgment. Counsel must have some latitude in the argument of cases; and, while we have reversed cases for intemperate language of counsel, where it plainly appeared that it was used for the purpose of arousing the passions or prejudices of the

jury, which must necessarily prejudice the opposite party, we see nothing in these remarks which should call for any such rule.

7. We have examined this record, and have been unable to find any error in the proceedings. We have not felt called upon to discuss all the assignments of error, but have examined them with that care which the large amount involved demands.

One other point demands attention. It is claimed that the amount of damages is excessive. Not having found any error in the proceedings, or anything improper upon the trial tending to prejudice the defendant's rights, or inflame the jury and thereby prejudice them against the defendant, we cannot disturb the verdict on the ground solely that it is greater in amount than we think should have been given. *Hunn v. Railroad Co.*, 78 Mich. 529; *Richmond v. Railway Co.*, 87 Id. 392; *Stuyvesant v. Wilcox*, 92 Id. 233.

I am not prepared to say, however, that cases might not arise where, even under our former rulings, we would be justified in considering that question. If the verdict were such as to shock the common sense and judgment of mankind, it might call for a different rule, and the Court might be justified in overturning it. But that is not so in this case. The jury have taken into consideration the pain and suffering this plaintiff has endured, and the loss to him for the remainder of his years of both feet. The verdict may be large, but the jury alone had the right to determine it.

The judgment must be affirmed, with costs.

The other Justices concurred.