STEKETEE *v.* WATERS.

1. CARRIERS—RAILROADS—NEGLIGENCE—ALIGHTING.
   The authorities are uniform in holding that aged or infirm passengers are entitled to more attention and care from the carrier than others and the carrier is bound to exercise a degree of care commensurate with their condition or infirmities.

2. SAME—EVIDENCE—NEGLIGENCE.
   *Held,* under the testimony in plaintiff's behalf, in an action for defendants' failure to help plaintiff from the car, in a duly careful manner, that the determination of the jury that defendants were negligent is sustained.

3. SAME—CONTRIBUTORY NEGLIGENCE—NOTICE.
   Where plaintiff did not inform defendants' servants that she was an invalid and would require a stool to step on in alighting from the train, until she stood on the bottom step of the car, ready to alight, it cannot be said that she was guilty of contributory negligence, as matter of law, even though she was familiar with the conditions at the depot.

4. PLEADING—VARIANCE—AMENDMENT—DISCRETION.
   There was no abuse of the court's discretion in permitting an amendment of plaintiff's declaration, after the proofs were in, by inserting the word "conductor" following the word "brakeman," and further amending by stating that as plaintiff was on the steps and about to alight from the train she informed the defendants' brakeman or conductor that she could not alight unless a step was furnished because she had recently undergone an operation, where the notice was given to either the brakeman or conductor and both were sworn upon the trial, and no claim was made by defendants that they were surprised.

Error to Ottawa; Cross, J. Submitted June 23, 1916. (Docket No. 55.) Decided September 26, 1916.

193 Mich.—12.

Case by Alida Steketee against Dudley E. Waters, Frank W. Blair, and Paul H. King, receivers of the Pere Marquette Railroad Company, for personal injuries. Judgment for plaintiff. Defendants bring error. Affirmed.

*Parker, Shields & Brown* and *Charles E. Ward,* for appellants.

*Smedley & Linsey,* for appellee.

In October, 1913, the plaintiff, a married woman 43 years of age residing at Holland, went to Evart, Mich., for the purpose of having an operation performed by one Dr. Hooverter. She had given birth to two children, and since the birth of her second child had experienced some female trouble. To obtain relief from this trouble she sought the help of Dr. Hooverter, and after the operation was confined to her bed for three weeks. On November 18th, accompanied by her husband, she returned to the city of Holland. On her return trip she drove from her brother's home in Evart to the depot in a surrey with a low step. A little stool was used for her to get into and out of the carriage, and the same stool was used in mounting the steps of the Pere Marquette train which she took from Evart to Reed City. The trip necessitated change of cars at Reed City and Grand Rapids. At Reed City the distance between the platform and the last step of the coach was five inches, and at Grand Rapids on the Pere Marquette Railroad between three and four inches, and on the Grand Rapids & Indiana Railroad between four and five inches. It is the plaintiff's claim that in alighting from defendant's train at Holland, because of the negligence of employees of the defendant, she received injuries which caused her operation to become undone, and that some time afterwards she

returned to Evart and there underwent a second operation by the same surgeon identical with the first.

In addition to the mail and baggage cars, the train in question was composed of two day coaches and a parlor car. The parlor car was equipped with an extra step, but the day coaches were not. It was shown by measurements that the distance from the bottom step of the coach in which plaintiff rode to the platform was sixteen and a half inches.

The two following special questions were submitted to the jury, and were both answered by them in the affirmative.

"(1) Were the defendants guilty of negligence in failing to furnish plaintiff a step?
"(2) Were the defendants negligent in the manner in which the conductor or brakeman assisted plaintiff off of the car?"

The trial resulted in a verdict in favor of the plaintiff for $1,500.

It is now urged by counsel for defendants that the judgment entered should be set aside and reversed because it appears:

(1) That the defendants were not guilty of any negligence.
(2) That the plaintiff was guilty of contributory negligence as a matter of law.
(3) That there was a fatal variance between the pleadings and the proofs.
(4) That the trial judge erred in the charge to the jury as given.

KUHN, J. (*after stating the facts*). There is no claim made by counsel for the plaintiff that it was negligence on the part of the railroad company to run a passenger car the last step of which is 16½ inches above the ground or platform at a station. Plaintiff's claim as to how the accident happened was thus stated by the learned trial judge in his charge to the jury:

"Plaintiff further claims as she was about to alight from the train at the place where the train stopped at Holland she informed the defendants' brakeman or conductor that she had recently undergone an operation, and that it would be necessary for defendants' brakeman or conductor to furnish a stool or step to be placed upon the ground beneath the steps of the passenger coach so she would not be compelled to take an unreasonably lengthy step in order to reach the ground, because of her condition, and that it would be necessary for defendants' brakeman or conductor to assist her in alighting from the train. Plaintiff further claims that after said brakeman or conductor had been requested to furnish the step or stool, and while plaintiff's husband was in the act of setting down their suit cases upon the ground so as to be in position to assist her to alight, and while she was standing upon the step of the coach, said brakeman or conductor suddenly and without warning to her took hold of her person in a careless and negligent manner, pulled her off the step of the coach, thus causing her to take a long step from the step of the coach to the ground, and this long step, with the sudden pulling or jerking of said brakeman or conductor, caused the whole operation to be undone, and made it necessary for plaintiff to again submit to another operation, which caused her a great deal of pain and suffering, as described by her and her witnesses upon the stand. Plaintiff therefore claims: *First,* that it was the duty of the defendants to furnish her a safe and convenient method of alighting from said train, and that because of her condition, and because she informed defendants' brakeman or conductor of her condition, and because of the distance of the step of the coach to the ground was greater than she could safely step, defendants should have furnished her a stool or step from which she could step from there to the ground; *second,* that it was the further duty of defendants' brakeman or conductor while attempting to assist her in alighting to do so in a careful and prudent manner, and not to suddenly pull her from the step."

The jury in answering the second special question found that the company was negligent because of the

manner in which the conductor or brakeman assisted
the plaintiff off of the car. It is urged by defendants'
counsel that there was not sufficient evidence in the
record to sustain this finding, and that a fair con-
struction of all plaintiff's testimony shows that the
railroad employee assisted her to alight with great
care. The plaintiff while on the witness stand testified
in part as follows:

"*Q.* As you started to get off the step what took
place?

"*A.* I got down to the bottom step. I saw I could
not step that high step, and I said I could not step that.

"*Q.* Who did you say it to?

"*A.* I said I must have a step.

"*Q.* What did he say?

"*A.* He said he could help me. I said, 'No,' I could
not be lifted, because I had gone through what I had;
I had the operation.

"*Q.* Did you tell him that?

"*A.* Yes.

"*Q.* And then what did he say?

"*A.* He said he would help me.

"*Q.* What did you say?

"*A.* Of course, I don't remember everything, it went
so quick, but I said I should have a step.

"*Q.* Then what happened?

"*A.* He took hold of me and pulled me carelessly
off of there, and it hurt me, and hurt me awful, and
I said so to Mr. Steketee afterwards.

"*Q.* When he pulled you, what happened to you?

"*A.* It hurt me.

"*Q.* What happened to your feet?

"*A.* I had to step that step.

"*Q.* Why? Why did you have to step that step?

"*A.* That was the only thing I could do.

"*Q.* Was it because he had hold of you pulling you?

"*A.* Why, yes.

"*Q.* Go on and tell why you had to take that step;
where did he have hold of you?

"*A.* He took hold of my arm.

"*Q.* And then what did he do?

"*A.* Tried to help me down there and the step, of

course, was too much—rather pulled me .like, and, of course, I felt the hurt. (Continuing.) I felt the hurt at the time I was taken off. When he took hold of my arm I had to step with one foot first. It was about 19 inches to the ground. I didn't know how far it was just then; of course knew it was an awful high step. It was a high step for a well person. As he got me down I didn't say anything particular to him; I said it hurt me awful."

The authorities seem to be uniform in holding that in the case of a sick, aged, or otherwise infirm passenger the carrier should exercise a degree of care commensurate with the responsibility assumed, which would be such care as would be reasonably necessary to protect him in view of his condition. 2 Hutchinson on Carriers (3d Ed.), p. 1140; 6 Cyc. p. 598; 2 Moore on Carriers (2d Ed.), p. 1250; *Croom* v. *Railway,* 52 Minn. 296 (53 N. W. 1128, 18 L. R. A. 602, 38 Am. St. Rep. 557); 4 R. C. L. p. 1160, par. 594.

Whether or not the defendant upon this record failed to perform its duty was a question which in our opinion was properly submitted to the jury. The jury having affirmatively determined in answer to the special interrogatory that the company was negligent in the manner of helping the plaintiff off of the car, which determination, we think, finds support in the evidence, it will be unnecessary to consider the other question of negligence relied upon by the plaintiff.

Neither are we of the opinion that it can be said that the plaintiff was guilty of contributory negligence as a matter of law. It is urged that it appears she was familiar with the conditions at the depot at Holland, and that neither she nor her husband gave any notice to the conductor or any member of the train crew of her physical condition, or made any request to be furnished with a stool at Holland until she was on the last step of the car and in the act of stepping off. It may be true that the distance between the step and

the platform had not impressed itself upon her mind while she was well, and undoubtedly she did not realize the distance until she stood on the last step and was about to alight. It does not appear that she got off of the car voluntarily, and when it became evident to her that taking the long step might possibly do her injury she had a right to hesitate and state her reasons for not alighting to the employee who was there to assist her.

The variance between the pleadings and proofs relied upon relates to the time and place of giving defendants' employees notice of the plaintiff's condition. With reference to this amendment, which was asked for and allowed after the proofs were in, the following occurred:

"Thereupon counsel for plaintiff moved 'to amend the declaration at these places where it says the brakeman by inserting the word "conductor" following the word "brakeman," and further, on page 3, the second paragraph from the top, I wish to amend by stating that as plaintiff was upon the steps and about to alight from the train she informed the said defendants' brakeman or conductor that she could not alight from the step without having a step furnished because she has recently undergone an operation.'

"Mr. Diekema: We object to the motion being made at this time when the proofs are all in and the case has been closed.

"The Court: I think the amendment may be made."

The notice given by plaintiff was either to the defendants' brakeman or conductor, and both of these witnesses were sworn upon the trial of the case and were present in the courtroom. It was not claimed by defendants' counsel that they were surprised and could not meet the issue raised by this amendment, and we cannot say that the court abused its discretion in permitting the amendment to be made.

Careful reading of the court's charge is satisfying

that the issue presented was fairly submitted to the jury with proper legal instructions, and no prejudicial error was committed by the court therein.

We are unable to find any reason for disturbing the judgment of the court below, and it will therefore be affirmed.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.