TOZER *v.* MICHIGAN CENTRAL RAILROAD CO.

1. CARRIERS—PERSONAL INJURIES—PROXIMATE CAUSE—NEGLIGENCE.

Where an invalid, plaintiff's decedent, riding in defendant's baggage car, was placed by defendant's baggageman, with the knowledge of defendant's conductor, both experienced railroad men, on a cot near a pile of trunks, which, upon a sudden stopping of the train by the engineer, toppled over upon and injured the decedent, and, had she not been so placed, one or more of the trunks would not have fallen upon her, the proximity of the cot to the trunks was the proximate cause of the injury and due to the act of the baggageman.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Where an invalid was negligently placed on a cot in a baggage car of defendant by her husband and brother, under the direction of defendant's baggageman, near a pile of trunks which toppled over and injured her, upon a sudden stopping of the train, *held,* that the question whether the husband and brother were contributorily negligent was for the jury.

3. SAME—ASSUMPTION OF RISK.

An invalid, who was placed by her husband and brother, neither of whom was experienced in railroading, under the direction of defendant's baggageman and with the knowl-

edge of defendant's conductor, both of whom were experienced railroad men, in defendant's baggage car upon a cot near a pile of trunks which, upon a sudden stopping of the train, toppled over and injured her, and there was room in the car for her. to be placed so that the trunks would not fall upon her, did not assume the risk of such injury. .

4. SAME—NEGLIGENCE—LIABILITY.

Where an invalid passenger on defendant's railroad train was placed by defendant's baggageman for transportation on a cot in the baggage car with the knowledge of defendant's conductor, who collected full fare for such transportation, *held*, that it was for the jury to determine the question of defendant's liability for injuries sustained by such passenger while being so transported. · '

5. DAMAGES—DEATH—EXCESSIVE VERDICT.

Verdict for $2,625 *held*, not excessive for injuries hastening the death of plaintiff's decedent, who was 60 years of age, had been an invalid for some time, but probably would have regained her health in a short time, and who had been severely hurt and suffered pain for six weeks from the injury until her death:[1]

Error to Otsego; Sharpe, J.    Submitted January 17, 1917.    (Docket No. 88.)    Decided April 9, 1917.

Case by Harvey Tozer, executor of the estate of Minnie Tozer, deceased, against the Michigan Central Railroad Company for the unlawful killing of plaintiff's decedent.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*George L. Alexander* (*George M. Humphrey*, of counsel), for appellant.

*W. L. Townsend* and *C. S. Reilly*, for appellee.

MOORE, J.    This is an action on the case for damages for injuries received by and the ultimate death of Mrs. Tozer, plaintiff's wife, claimed to have been

[1]On the question of excessive or inadequate damages for personal injuries resulting in death, see note in L. R. A. 1916C, 820.

due to the negligence of a baggageman in the employ
of the defendant. The accident occurred on the 6th
day of September, 1915, while deceased, who was sick
at the time, was riding on a cot in a baggage car at-
tached to a regular passenger train, en route from
Otsego Lake to a hospital in Bay City. Because of
the sudden stopping of the train trunks fell upon her.
A motion for a directed verdict for the defendant was
made and overruled. From a judgment for plaintiff
of $2,625, the defendant brings the case into this court
by writ of error.

After the verdict was rendered a motion was made
for a new trial. In overruling this motion the trial
judge filed an opinion which so clearly states the issues
involved that we quote from it freely as follows:

"There is little dispute about the facts. Plaintiff's
intestate, while ill, was riding on a cot in a baggage
car on one of defendant's passenger trains. The car
was filled with trunks, piled as high as convenient,
from its north end to the doors nearest the south end.
The remaining space was comparatively unoccupied.
The baggageman says it was so left to accommodate
cream cans which he expected to be required to take
on. The cot was placed on the west side of the car,
and quite close to a pile of trunks. When the train
had traveled a few miles south of Otsego Lake, where
plaintiff's intestate was put on, the engineer discov-
ered that something was wrong with the locomotive
and applied the emergency brake. The sudden stop-
ping of the train caused the trunks to topple over, and
seriously injure the deceased. The position in which
the cot was placed was directed by the baggageman.
The husband and brother of the deceased were in the
baggage car with her. The husband had, in this car,
paid the fare of all three to Bay City, where the de-
ceased was being taken to a hospital. The injuries
she received caused her much pain and suffering and
hastened her death. The jury awarded damages in
the sum of $2,625.

"The grounds of the motion will be considered in
the order in which they are set up. The first four
may well be considered together:

"(1) No negligence of defendant was established.

"(2) The negligence complained of was not the proximate cause of the injury to deceased.

"(3) Plaintiff's decedent assumed the risk.

"(4) Plaintiff's decedent was guilty of contributory negligence.

"The negligence charged against defendant on which plaintiff relies was the act of the baggageman in placing the cot so near the pile of trunks when he knew, or by the exercise of reasonable care and foresight should have known, that if the emergency brake should be applied, the trunks would be likely to topple over and injury to deceased probably result. Unless ordinary foresight on his part would have so anticipated, the jury were instructed that the defendant was not liable.

"It is, of course, true that had not the emergency brake been applied, no injury would have been sustained by the deceased. It seems just as certain that had not the cot been placed so near the pile of trunks, no injury would have resulted.

"The conductor testified, and he is not disputed, that the necessity frequently arises in the operation of passenger trains for the engineer to apply the emergency brake. The effect of such application is well known. The attempt to so stop a heavy passenger train cannot but result in the tumbling of all articles not quite securely fastened. Of course no one who knows Mr. Borland, the baggageman, would for a moment believe that he intentionally placed the deceased in a position of danger, but had he considered the matter, I cannot but believe that he would have so concluded. He was in charge of the car, and it was his duty to think about it, and to take such reasonable precautions as were necessary so as not to subject the deceased to unusual danger.

"The question of proximate cause, herein involved, was considered by our Supreme Court in *Selleck* v. *Railway Co.*, 93 Mich. 375 [53 N. W. 556, 18 L. R. A. 154], and many authorities cited and quoted from therein. It is also discussed at length in Cooley on Torts (2d Ed.), p. 73 *et seq.*, and in Baldwin on Personal Injuries (2d Ed.), § 12 *et seq.* From these and the other authorities I have consulted, I believe the

rule of law which should govern this case to be as follows:

"If a man does an act and he knows, or by the exercise of reasonable foresight should have known, that in the event of a subsequent occurrence, which is not unlikely to happen, injury may result from his act, and such subsequent occurrence does happen and injury does result, the act committed is negligent, and will be deemed to be the proximate cause of the injury.

"Mr. Baldwin cites the case of *Jensen* v. *The Joseph B. Thomas*, 81 Fed. 578, in these words:

"'The plaintiff was at work in the hold of the vessel. The hatch covers were piled up by the hatchway, under which the plaintiff was at work. A keg was placed upon the covers, and this keg was precipitated upon the plaintiff by reason of some person stepping upon the covers. *Held*, that the defendant was liable.'

"The case of *Southwestern Telegraph, etc., Co.* v. *Robinson*, 50 Fed. 810 [1 C. C. A. 684, 16 L. R. A. 545], is cited with approval in the *Selleck Case*, as follows:

"'The company had permitted one of its wires to remain suspended across a public highway a few feet from the ground, and plaintiff came in contact with it during an electrical storm, and was injured by a discharge of electricity, which had been attracted from the atmosphere. The court held that, since the electricity would have been harmless except for the wire, the defendant was liable.'

"Each of these cases seems to me decisive of the question here presented. They both hinge upon the rule above stated, that the act was negligent in view of the consequences not unlikely to result therefrom and which should have been foreseen by the exercise of reasonable foresight, and such act was deemed to be the proximate cause of the injury. It is this element, it seems to me, which distinguishes this case from those on which defendant's counsel rely. In the case of *Lewis* v. *Railway Co.*, 54 Mich. 55 [19 N. W. 744, 52 Am. Rep. 790], the court says that the wrong committed by defendant was in no way connected with or related to the injury. Neither could defendant's servants have reasonably foreseen that plaintiff would

probably step into an open cattle guard when he was familiar with the premises and well knew a way to reach the station without passing over the cattle guard at all. This distinction is pointed out in the case of *Louisville, etc., R. Co.* v. *Rommele* [152 Ky. 719], 154 S. W. 16 [Am. & Eng. Ann. Cas. 1915B, 267], also cited by defendant's counsel, wherein the court say, if defendant's servants with 'ordinary care might reasonably anticipate that the movement of the car would cause it [the package in the rack] to fall out, it is the duty of the servants named to remove it from the rack or secure it in some way, and if they fail to do this, and a passenger is injured by the package falling from the rack, the carrier will be liable.'

"The case of *Sheltrawn* v. *Railroad Co.*, 128 Mich. 669 [87 N. W. 893], conforms to the same reasoning. The negligence of the defendant was in furnishing a flat car for use in loading logs, apparently supplied with a proper brake, whereas in fact the ratchet wheel was broken. It, of itself, caused no injury, but its absence caused the plaintiff to attempt to block the car, and he was injured by logs falling upon him. The defendant was chargeable with notice that when the car was in use in loading logs, it would be necessary to stop it at skidways, and that the brake was there to be used for that purpose. Its inefficiency necessitated the use of other means which linked and connected itself with the original wrongful act in committing the injury.

"Defendant's counsel submit a list of cases which hold that where a person takes a place on a train not provided for passengers, he assumes the risk incident to such place and the uses to which it is put, but none of such cases holds that riding in such a place relieves the company from damages due to an overt act of negligence. In this case we find a sick woman on a cot as the train pulls out at Otsego Lake. There was no agent or operator there who might have been consulted. There is some evidence that those in charge of deceased were told to take the cot to the opening at which the baggageman stood, but, aside from that, she was taken there, and the baggageman assisted in getting her into the car, and directed where the cot should be placed. The conductor accepted her fare and that of those who accompanied her while in that

car, and understood that she was to ride in it to her destination. Having so received her, the rule of assumption of risk should not, in my opinion, apply. The officials in charge of the train saw her condition; and if, owing to the uses to which it was necessary for them to put the baggage car, or the dangers incident thereto, which were known, or should have been anticipated, by them, such place was dangerous, they should have refused to receive her. Having accepted her, as stated to the jury, 'the other necessities of the baggage car must, to a sufficient extent, yield to the care of this woman on the cot, as not to cause the baggageman to place her in a position of danger.' This was qualified by the further statement that such position of danger 'must have been known, or should have been known by the exercise of reasonable care.'

"5 and 6. In my opinion the weight of the evidence was for the jury. If the case was properly submitted to them, there was surely sufficient evidence in support of the plaintiff's claim to justify the verdict rendered.

"7. In view of the testimony of the physician and nurse who attended the deceased as to the pain and suffering she endured, and the fact, not disputed, that her life was shortened by the injury, I do not feel that the damages found by the jury can be said to be so excessive as to justify interference on my part."

Counsel for appellant present here practically the same questions that were presented on the motion for a new trial. They are grouped by counsel as follows:

"(1) The absence of evidence of negligence of the defendant's baggageman 'in negligently placing the said cot and plaintiff's intestate near said trunks.'

"(2) The affirmative proof that negligence attributable to defendant was not the proximate cause of plaintiff's injury.

"(3) The affirmative showing that plaintiff's decedent assumed the risk of this injury.

"(4) The affirmative showing that plaintiff himself was guilty of contributory negligence which is imputed to decedent and bars recovery.

"(5) The grossly excessive damages."

Each of these groupings is discussed at great length

in a very carefully prepared brief in which a great many authorities are cited, but the questions involved are comparatively simple, as we think is shown by the opinion from which we have so freely quoted.

Groupings 1 and 2 may be discussed together: The testimony shows that the baggageman and the conductor were both experienced railroad men, and knew, or should have known, what was liable to occur by the movements of the train and the effect that should be anticipated upon movable baggage in the baggage car should it be necessary to stop the train suddenly. They also knew that in the operation of the train it was frequently stopped suddenly. It is true that the accident to the engine justified the use of the emergency brakes, but it is equally true, as stated by the trial judge, that if the cot had not been placed near the trunks, piled one upon the other, one or more of them would not have fallen upon Mrs. Tozer, so that we think it clear that the proximity of the cot to the falling trunks was the proximate cause of the injury, and the cot was so placed by the direction of the baggageman.

3 and 4 may be discussed together. Whether plaintiff's decedent assumed the risk depends upon whether she knew, or should have known, of the risk. There is nothing to show that she had ever before been in a baggage car or had any knowledge of the risks involved by riding there, but it is said the husband and brother assisted in placing the cot, and if the baggageman was negligent, they were negligent, and their negligence must be imputed to the deceased, and bars recovery. This contention overlooks the element of the experience, or rather lack of experience, of the husband and brother in situations like the one we are considering. They were instructed what to do by the baggageman, who had experience and they had none, and when the cot was in the car the bag-

gageman directed where it should be placed. There was no station agent with whom an arrangement could be made in advance for the placing of the cot. The baggageman is said to have directed that it be brought into the baggage car; at least he did not object to it. The conductor saw the cot and what was being done with it before it was put in the car. He afterwards collected fares from the deceased, the husband, and the brother, and saw the situation of the cot, and made no suggestion that it should be moved. There is testimony there was room in the car so that the cot might have been placed where the falling of the trunks would have worked no mischief. The trial judge, under a very careful charge, left the question of whether the husband or brother was guilty of contributory negligence to the jury. In the recent case of *Steketee* v. *Waters,* 193 Mich. 177 (159 N. W. at page 370), Justice Kuhn, speaking for this court, said:

"The authorities seem to be uniform in holding that in the case of a sick, aged, or otherwise infirm passenger the carrier should exercise a degree of care commensurate with the responsibility assumed, which would be such care as would be reasonably necessary to protect him in view of his condition. 2 Hutchinson on Carriers (3d Ed.), p. 1140; 6 Cyc. p. 598; 2 Moore on Carriers (2d Ed.), p. 1250; *Croom* v. *Railway,* 52 Minn. 296 (53 N. W. 1128, 18 L. R. A. 602, 38 Am. St. Rep. 557) ; 4 R. C. L. p. 1160, par. 1594."

It should be remembered that Mrs. Tozer was a passenger for whom a full fare was paid, traveling upon a regular passenger train, and in a location selected by a train officer. See *Larskowski* v. *Railway,* 193 Mich. 409 (159 N. W. 530). In the instant case we agree with the trial judge that there was a case for the jury, and that it was fairly submitted to them.

One other question remains, and that is, Was the verdict so excessive as to call for our intervention?

The plaintiff, it is true, was upwards of 60 years of age, and had been an invalid for some time, but her attending physician testified that, in his judgment, if she would go to the hospital for a short time, she would regain her health and be all right. She was on her way to the hospital when the accident happened. She was severely hurt, suffering pain for six weeks, when she finally died. See *Hunn* v. *Railroad Co.*, 78 Mich. 513, 529 (44 N. W. 502, 7 L. R. A. 500) ; *Retan* v. *Railway Co.*, 94 Mich. 146 (53 N. W. 1094) ; *Love* v. *Railroad Co.*, 170 Mich. 1 (135 N. W. 963). We do not think we should disturb the verdict.

Judgment is affirmed, with costs.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.